JEFF SILVESTRI, ESQ.
Nevada Bar No. 5779
McDONALD CARANO WILSON LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, NV 89102
Telephone: 702.873.4100
Facsimile: 702.873.9966
E-mail: jsilvestri@mcdonaldcarano.com

ADAM K. MORTARA, ESQ. (*pro hac vice*)
BRIAN C. SWANSON, ESQ. (*pro hac vice*)
JASON L. PELTZ, ESQ. (*pro hac vice pending*)
REID M. BOLTON, ESQ. (*pro hac vice pending*)
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: 312.494.4400
Facsimile: 312.494.4440
E-mail: adam.mortara@bartlit-beck.com
       brian.swanson@bartlit-beck.com
       jason.peltz@bartlit-beck.com
       reid.bolton@bartlit-beck.com

DANIEL C. TAYLOR, ESQ. (*pro hac vice*)
BARTLIT BECK HERMAN
  PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, CO 80202
Telephone: 303.592.3100
Facsimile: 303.591.3140
E-mail: daniel.taylor@bartlit-beck.com

*Attorneys for Plaintiff and Counterclaim Defendant IGT*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IGT,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ARISTOCRAT TECHNOLOGIES, INC.,<br><br>　　　Defendant.<br><br>ARISTOCRAT TECHNOLOGIES, INC.,<br>ARISTOCRAT TECHNOLOGIES<br>AUSTRALIA PTY. LTD., and<br>ARISTOCRAT INTERNATIONAL PTY. LTD.,<br><br>　　　Counterclaim Plaintiffs,<br><br>　　　v.<br><br>IGT,<br><br>　　　Counterclaim Defendant. | CASE NO. 2:15-cv-00473-GMN-GWF<br><br>**STIPULATION REGARDING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

It is hereby stipulated and agreed, by and between Plaintiff/Counterclaim Defendant IGT and Defendant/Counterclaim Plaintiff Aristocrat Technologies, Inc. ("ATI") and Counterclaim Plaintiffs Aristocrat Technologies Australia Pty. Ltd. and Aristocrat International Pty. Ltd. (together with ATI, "Aristocrat") (collectively, IGT and Aristocrat are "the Parties," and each a "Party"), by their respective counsel in the above-captioned action as follows:

1. This Stipulation shall govern the production of documents and electronically stored information ("ESI"), as described in Federal Rule of Civil Procedure 34. This stipulation does not govern the production of source code.

2. The Parties shall produce paper documents and ESI according to the specifications provided in Exhibit A.

3. A Party is only required to produce a single copy of a responsive document. A Party may remove exact duplicate ESI only according to the method specified in Exhibit A and shall provide the "CustodianAll" metadata field specified in Exhibit A. However, (i) attachments to e-mails shall not be eliminated from the parent e-mail, and (ii) paper documents shall not be eliminated as duplicates of responsive ESI. To the extent the parties de-duplicate stand-alone electronic documents against an e-mail attachment, the attachment to the e-mail must be the document that is produced. ESI that is not an exact duplicate may not be removed.

4. The Parties will make reasonable efforts to ensure that all documents produced in native form are decrypted, but the Parties have no duty to identify encrypted documents prior to production.

5. If a Party objects to production of a specific document in the format described in Exhibit A as impracticable or unduly burdensome or expensive, the Parties shall meet and confer in good faith regarding an alternative method of production, such as in native format, and, absent agreement, the Producing Party may move for a protective order.

6. Each Party reserves the right to request native files for documents that are difficult to understand when produced in the format specified in Exhibit A or that contain potentially relevant embedded information, and such requests will not be unreasonably denied. Such a request shall be made according to the following protocol.

(a) The requesting Party shall provide a list of Bates numbers of the documents that it is requesting to be produced in native file format.

(b) Within fourteen (14) days of receiving this request, the producing Party will either (i) produce the requested native files to the extent reasonably practicable or (ii) respond in writing, setting forth its position on the production of the requested documents.

(c) If the Parties are unable to agree as to the production of the requested documents in native format, the parties may submit the matter to the Court.

7. In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents – for example, a binder containing several separate documents behind numbered tabs – the document behind each tab should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

8. This Stipulation shall have no effect on any producing Party's right to seek reimbursement for costs associated with collection, review, or production of documents or ESI.

9. Each Party shall be responsible for generating a searching protocol that it believes in good faith will return a reasonably high proportion of responsive documents. For e-mails and other ESI collected from individual custodians, the Parties agree to use search terms to identify the documents that it will review for responsiveness.

(a) The Parties will exchange lists of proposed custodians and the proposed search terms that each Producing Party proposes to use to for each custodian. If a Producing Party has reason to believe that responsive documents are in a language other than English, the Party will include in its proposed search terms any translated search terms it proposes to use.

(b) The Parties agree to limit the number of custodians whose email will be searched to up to nine (9) custodians per side, unless otherwise agreed to by the parties or for good cause shown. Each side shall choose seven (7) internal document custodians by selecting

in good faith those custodians most likely to have created or received responsive documents. As indicated below (in paragraph 9(d)(ii)), each side also will be allowed to identify up to two (2) additional document custodians from the opposing side from whom documents will be collected.

(c) The parties agree that search terms must be narrowly tailored to specific issues that are most likely to be found in the ESI of the identified custodians and that are unlikely to be found in documents collected from shared sources or other non-email sources. Indiscriminate terms, such as the Producing Party's name or the names of its products, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged. A Producing Party shall not be required to use the Requesting Party's search terms if the entire set of terms, when applied to the nine document custodians, return more than 60,000 documents. However, the parties further agree that the mere fact that the requested search terms return 60,000 or fewer documents does not establish that the search terms are appropriate or otherwise comply with the parties' obligation to avoid the use of search terms that are not narrowly tailored to the specific issues that are most likely to be found in ESI of individual custodians as opposed to other sources. For example, a particular search term that returns a disproportionate amount of non-responsive documents would be objectionable. To the extent that search terms proposed by the parties return more than 60,000 documents, the parties agree to work together to revise or eliminate search terms until the search terms return fewer than 60,000 documents.

(d) The Parties agree to the following schedule for exchanging and agreeing upon the lists of proposed custodians and search terms.

    i. With thirty (30) days of execution of the Stipulation, the Parties will exchange lists of their seven proposed custodians and search terms for each of the proposed custodians. The Parties must disclose the name and current job title of each of the seven proposed custodians. In addition, each Party shall provide its most recent organization charts to the

4

opposing Party.

    ii. Within seven (7) days of the Parties' exchange of proposed custodians and search terms, each Party shall have the right to request reasonable modifications to the search terms, and such requests will be considered in good faith. In addition, each Party may request up to two (2) additional document custodians from the opposing side from whom documents will be collected. A Party requesting additional document custodians shall also suggest up to eight (8) search terms to be used for each additional custodian in accordance with subparagraph (c).

    iii. Within twenty-one (21) days of the Parties' exchange of proposed custodians and search terms, the Parties will meet and confer to agree on final search terms and custodians for each Party. Once the Parties have agreed on final search terms, no search terms shall be added thereafter in the absence of a further agreement between the Parties or unless good cause is shown to the Court.

    iv. In the event that any Party issues additional requests for production after the Parties have agreed on final search terms, the Parties will, at the request of a Party, meet and confer in good faith within fourteen (14) days after the date that the objections to any such requests are due to discuss the need for supplemental search terms and custodians and a schedule for conducting additional searches.

10. Each Party shall in good faith collect documents from sources shared by more than one custodian (e.g., folders on shared drives or central repositories) likely to contain responsive documents. The presumption is that collection from these shared repositories and seven to nine custodians will be sufficient to comply with a Party's obligations under Federal Rule of Civil Procedure 34. Absent agreement between the Parties, any Party must seek leave of Court and establish good cause to request searches of any additional document custodians.

1    11.     No Party shall be required to collect, search, produce or log any email created on or
2 after March 16, 2015, the date the original complaint was filed in this action.  This provision is not
3 intended to impact the Parties' obligations with respect to the collection, production or logging of
4 hard copy documents or non-email ESI created on or after March 16, 2015.

5    12.     Absent a particularized and reasonable need, it shall not be necessary for the Parties
6 to search for information from the following sources: cellular phones, smart phones, tablets,
7 voicemail systems, instant messaging, legacy computer systems, backup tapes and other discovery
8 recovery systems, and slack data.

9    13.     The following protocol shall apply to the processing of third-party documents:

   (a)     A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of Exhibit A to this Stipulation with the subpoena and state that the Parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth therein.

   (b)     The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

   (c)     If the Issuing Party receives any hard-copy documents or native files, the Issuing Party will process the documents in accordance with the provisions of this Stipulation, and then produce the processed documents to all other Parties.  However, any documents the Issuing Party does not intend to process for its own use may be disseminated to all other Parties in the format in which such documents are received by the Issuing Party.  If the Issuing Party subsequently processes any such documents, the Issuing Party will produce those processed documents to all other Parties.

   (d)     If the non-party production is not Bates-stamped, the Issuing Party will endorse the non-party production with unique prefixes and Bates numbers prior to producing them to all other Parties.

   (e)     Nothing in this Stipulation is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

14. This Stipulation is subject to the provisions of the Protective Order (Dkt. No. 65), Federal Rule of Civil Procedure 26(b)(5), and Federal Rule of Evidence 502, governing the inadvertent production of privileged or protected documents. Nothing in this Stipulation shall supersede the provisions of any Protective Order governing this case.

15. Nothing in this Stipulation shall be interpreted to require disclosure of (a) irrelevant information or (b) information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

16. Nothing in this Stipulation precludes a Party from making documents, things, or ESI available for inspection in accordance with Rule 34. However, any documents or ESI selected by a Receiving Party during an inspection must be produced by the Producing Party in accordance with this Stipulation, including Exhibit A hereto.

17. The Parties consent to service of all papers by email pursuant to Rule 5(b)(2)(E).

18. Counsel executing this Stipulation warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

**Respectfully submitted this 28th day of October, 2015.**

| | |
|---|---|
| /s/ Brian C. Swanson<br>JEFF SILVESTRI, ESQ.<br>Nevada Bar No. 5779<br>McDONALD CARANO WILSON LLP<br>2300 West Sahara Avenue, Suite 1200<br>Las Vegas, NV 89102<br>Telephone: 702.873.4100<br>Facsimile: 702.873.9966<br>E-mail: jsilvestri@mcdonaldcarano.com<br><br>ADAM K. MORTARA, ESQ. (*pro hac vice*)<br>BRIAN C. SWANSON, ESQ. (*pro hac vice*)<br>JASON L. PELTZ, ESQ. (*pro hac vice pending*)<br>REID M. BOLTON, ESQ. (*pro hac vice pending*)<br>BARTLIT BECK HERMAN<br>  PALENCHAR & SCOTT LLP<br>54 West Hubbard Street, Suite 300<br>Chicago, IL 60654<br>Telephone: 312.494.4400<br>Facsimile: 312.494.4440<br>E-mail: adam.mortara@bartlit-beck.com<br>      brian.swanson@bartlit-beck.com<br>      jason.peltz@bartlit-beck.com<br>      reid.bolton@bartlit-beck.com<br><br>DANIEL C. TAYLOR, ESQ. (*pro hac vice*)<br>BARTLIT BECK HERMAN<br>  PALENCHAR & SCOTT LLP<br>1899 Wynkoop Street, 8th Floor<br>Denver, CO 80202<br>Telephone: 303.592.3100<br>Facsimile: 303.591.3140<br>E-mail: daniel.taylor@bartlit-beck.com<br><br>*Attorneys for Plaintiff/Counterclaim Defendant IGT* | /s/ Gary M. Rubman<br>NICHOLAS J. SANTORO<br>SANTORO WHITMIRE, LTD.<br>10100 W. Charleston Blvd., Suite 250<br>Las Vegas, Nevada 89135<br>Telephone: (702) 948-8771<br>Facsimile: (702) 948-8773<br>E-mail: nsantoro@santoronevada.com<br><br>ROBERT T. HASLAM (*pro hac vice*)<br>COVINGTON & BURLING LLP<br>333 Twin Dolphin Drive, Suite 700<br>Redwood Shores, CA 94065<br>Telephone: (650) 632-4700<br>Facsimile: (650) 632-4800<br>E-mail: rhaslam@cov.com<br><br>GARY M. RUBMAN (*pro hac vice*)<br>PETER A. SWANSON (*pro hac vice*)<br>COVINGTON & BURLING LLP<br>One CityCenter, 850 Tenth Street, NW<br>Washington, DC 20001<br>Telephone: (202) 662-6000<br>Facsimile: (202) 662-6291<br>E-mail: grubman@cov.com<br>      pswanson@cov.com<br><br>*Attorneys for Defendant/Counterclaim Plaintiff Aristocrat Technologies Inc., and Counterclaim Plaintiffs Aristocrat Technologies Australia Pty. Ltd. and Aristocrat International Pty. Ltd.* |

IT IS SO ORDERED

*[signature]*

Honorable George Foley
United States Magistrate Judge

Dated: November 9, 2015

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of October, 2015, a true and correct copy of this **STIPULATION REGARDING THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** was electronically filed with the Clerk of the Court by using the CM/ECF service which will provide copies to all counsel of record registered to receive CM/ECF notifications in this case.

*/s/ Daniel C. Taylor*
Daniel C. Taylor

# EXHIBIT A

1. **IMAGES:**
   - Produce documents in Single Page Group IV TIFF files
   - Image Resolution at least 300 DPI
   - Black and White unless color is necessary to understand the meaning
   - File Naming Convention: Match Bates Number
   - Insert Placeholder image for files produced in Native form (see Section 2)
   - Original document orientation shall be retained

2. **SPECIAL FILE TYPE INSTRUCTIONS:**
   - Produce database, spreadsheet and presentation file types in Native Form (If redactions are required, files will be produced in TIFF Form)
   - Produce Audio/Video Media File Types in Native Form

3. **FULL TEXT EXTRACTION / OCR:**
   - Produce full extracted text for all file types (Redacted text will not be produced)
   - Produce OCR text for imaged document (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) using industry standard OCR technology where extracted text cannot be provided (Redacted text will not be produced)
   - Production format: Single text file for each document, not one text file per page
   - File Naming Convention: Match Beg Bates Number

4. **LOAD FILE SPECIFICATIONS:**
   - **Images Load File**: Opticon OPT file
   - **Metadata Load File**: Concordance DAT file with field header information added as the first line of the file. Export using Concordance default delimiters.
   - **Extracted TEXT (see section 3):** Reference File Path to TEXT file in DAT file
   - **Native Files Produced (see Section 2):** Reference File Path to Native file in DAT file

5. **ESI PRODUCTION METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **PgCount**: Page Count
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **CustodianA**ll: Custodian information for documents that were not processed because of duplicate status
   - **FileName**: Filename of the original digital file name
   - **NativeLink**: Path and filename to produced Native file (see section 2)
   - **EmailSubject**: Subject line extracted from an email message
   - **Title**: Title field extracted from the metadata of a non-email document

- **Author**: Author field extracted from the metadata of a non-email document
- **From**: From field extracted from an email message
- **To**: To or Recipient field extracted from an email message
- **Cc**: CC or Carbon Copy field extracted from an email message
- **BCC**: BCC or Blind Carbon Copy field extracted from an email message
- **DateRcvd**: Received date of an email message (mm/dd/yyyy format)
- **TimeRcvd**: Received time of an email message
- **DateSent**: Sent date of an email message (mm/dd/yyyy format)
- **TimeSent**: Sent time of an email message
- **DateCreated**: Date that a file was created (mm/dd/yyyy format)
- **DateModified**: Modification date(s) of a non-email document
- **Fingerprint**: MD5 or SHA-1 has value generated by creating a binary stream of the file
- **FileType**: File type description of the file
- **ProdVolume**: Identifies production media deliverable
- **ExtractedText**: File path to Extracted Text/OCR File
- **Redacted**: "X," "Y," "Yes," for redacted documents; otherwise, blank
- **Confidentiality**: Indicates if a document has been designated under the Protective Order

6. **PAPER DOCUMENTS METADATA FIELDS:**
   - **BegBates**: Beginning Bates Number
   - **EndBates**: Ending Bates Number
   - **BegAttach**: Beginning Bates number of the first document in an attachment range
   - **EndAttach**: Ending Bates number of the last document in attachment range
   - **Custodian**: Name of the Custodian of the File(s) Produced – Last Name, First Name format
   - **ProdVolume**: Identifies production media deliverable

7. **DE-DUPLICATION**
   - De-duplication method: Parties may de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Has value matching
   - Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be produced