NICHOLAS J. SANTORO (Nev. Bar No. 532)
SANTORO WHITMIRE, LTD.
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada  89135
Telephone:  (702) 948-8771
Facsimile:  (702) 948-8773
E-mail:  nsantoro@santoronevada.com

ROBERT T. HASLAM (*pro hac vice*)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone:  (650) 632-4700
Facsimile:  (650) 632-4800
E-mail:  rhaslam@cov.com

GARY M. RUBMAN (*pro hac vice*)
PETER A. SWANSON (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
E-mail:  grubman@cov.com, pswanson@cov.com

Attorneys for Defendant/Counterclaim Plaintiffs ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., and ARISTOCRAT INTERNATIONAL PTY LTD.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IGT,<br><br>      Plaintiff,<br><br>      v.<br><br>ARISTOCRAT TECHNOLOGIES, INC.,<br><br>      Defendant. | Case No.:  2:15-cv-00473-GMN-(GWF)<br><br>**COUNTERCLAIM DEFENDANTS ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY. LTD., AND ARISTOCRAT INTERNATIONAL PTY. LTD.'S MOTION TO DISMISS COUNTERCLAIM PLAINTIFF IGT'S BREACH OF CONTRACT AND CONVERSION CLAIMS**<br><br>**(Oral Argument Requested)** |
| ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY. LTD., and ARISTOCRAT INTERNATIONAL PTY. LTD.<br><br>      Counterclaim Plaintiffs,<br><br>      v.<br><br>IGT,<br><br>      Counterclaim Defendant. | |

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ..................................................**Error! Bookmark not defined.**

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................2

APPLICABLE LEGAL STANDARD ...................................................................4

ARGUMENT .........................................................................................................4

I.      IGT Does Not Allege a Plausible Breach of Contract. ...................................5

II.     IGT Does Not, and Cannot, Sufficiently Allege a Tortious Conversion Claim. ...........8

        A.      IGT Has Failed to Allege a Property Interest Capable of Being Converted
                Under Nevada Law. .................................................................................8

        B.      IGT Fails to Allege Facts Showing What Aristocrat Allegedly Converted.....................11

III.    IGT's Amended Counterclaims Fail As a Matter of Law Because the Conduct at Issue

        Was Not Committed by Aristocrat. ..............................................................11

IV.     IGT's Amended Counterclaims Fail As a Matter of Law Because They Are Time Barred

        Under Nevada's Statute of Limitations.........................................................13

CONCLUSION.........................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Petroleum Inst. v. Technomedia Int'l, Inc.*,
   699 F. Supp. 2d 258 (D.D.C. 2010) .................................................................................7

*Am. Registry, LLC v. Hanaw*,
   No. 2:13–CV–352–FtM29, 2013 WL 6332971 (M.D. Fla. Dec. 5, 2013) ...........................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................4, 5, 8, 11

*Asian Am. Entm't Corp. v. Las Vegas Sands, Inc.*,
   324 F. App'x 567 (9th Cir. 2009) .....................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................4, 6

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012).............................................................................................4

*Cascade Designs Inc. v. Windcatcher Tech. LLC*,
   No. C15–1310–TSZ, 2016 WL 374564 (W.D. Wash. Feb. 1, 2016) .............................6, 7, 8

*Dahon N. Am., Inc. v. Hon*,
   2:11–CV–05835–ODW, 2012 WL 1413681 (C.D. Cal. Apr. 24, 2012) ..............................12

*Elan Microelectronics Corp. v. Apple, Inc.*,
   No. C 09–01531, 2009 WL 2972374 (N.D. Cal. Sept. 14, 2009)..........................................5

*Farhang v. Indian Inst. of Tech., Kharagpur*,
   No. C–08–02658 RMW, 2010 WL 2228936 (N.D. Cal. June 1, 2010) .................................6

*Fayer v. Vaughn*,
   649 F.3d 1061 (9th Cir. 2011) .............................................................................................5

*Gibbons v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   No. 2:14–CV–586–JCM–VCF, 2015 WL 789694 (D. Nev. Feb. 25, 2015)...........................5

*Hackett v. OneWest Bank FSB*,
   No. 2:12–CV–01031–MMD, 2012 WL 6016740 (D. Nev. Dec. 3, 2012) ..........................12

*Hartley Pen Co. v. Lindy Pen Co.*,
   16 F.R.D. 141 (S.D. Cal. 1954) .........................................................................................14

*Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love LLP*,
   617 F. Supp. 2d 447 (W.D. Va. 2008), *aff'd*, 360 F. App'x 400 (4th Cir. 2010) ...............10

ii

*Hudnall v. Panola Cnty.*,
No. 2:06–CV–0490–RCJ–LRL, 2007 WL 1521446 (D. Nev. May 22, 2007)............................13, 14

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) ...........................................................................5, 11, 12

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) ...........................................................................8, 9, 10

*Laguerre v. Nev. Sys. of Higher Educ.*,
837 F. Supp. 2d 1176 (D. Nev. 2011)............................................................................5

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..............................................................................15

*M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*,
193 P.3d 536 (Nev. 2008)........................................................................8, 9, 10, 11

*Mack v. S. Bay Beer Distribs., Inc.*,
798 F.2d 1279 (9th Cir. 1986) ..............................................................................12

*Marder v. Lopez*,
450 F.3d 445 (9th Cir. 2006) ...............................................................................12

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ...................................................14

*Mills v. Bristol-Myers Squibb Co.*,
No. CV 11–00968, 2011 WL 4708850 (D. Ariz. Oct. 7, 2011) ................................................5

*Ne. Coating Techs., Inc. v. Vacuum Metallurgical Co.*,
684 A.2d 1322 (Me. 1996)...................................................................................10

*Nunes v. Ashcroft*,
348 F.3d 815 (9th Cir. 2003) ...............................................................................15

*Openwave Sys. Inc. v. Myriad France S.A.S.*,
C10–02805 WHA, 2011 WL 1832999 (N.D. Cal. May 13, 2011)............................................12

*Pellerin v. Honeywell Int'l, Inc.*,
877 F. Supp. 2d 983 (S.D. Cal. 2012)..........................................................................6

*Petersen v. Bruen*,
792 P.2d 18 (Nev. 1990)..................................................................................13, 14

*Ragan v. Merchants Transfer & Warehouse Co.*,
337 U.S. 530 (1949)........................................................................................13

*Skilstaf, Inc. v. CVS Caremark Corp.*,
669 F.3d 1005 (9th Cir. 2012) ..............................................................................12

iii

*Smelt v. Cnty. of Orange*,
  447 F.3d 673 (9th Cir. 2006) ............................................................................12

*Solis v. City of Fresno*,
  No. 1:11–cv–00053, 2012 WL 868681 (E.D. Cal. Mar. 13, 2012) ......................5

*Supermail Cargo, Inc. v. United States*,
  68 F.3d 1204 (9th Cir. 1995) ............................................................................13

*Wagenaar v. Robison*,
  No. 2:13–CV–01202–APG, 2014 WL 4206703 (D. Nev. Aug. 22, 2014)............12

*Walker v. Armco Steel Corp.*,
  446 U.S. 740 (1980) ..........................................................................................13

*Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*,
  297 U.S. 387 (1936)..........................................................................................14

**Statutes**

35 U.S.C. 120..............................................................................................................3

Nev. Rev. Stat. Ann. § 11.190(1)(b) ..........................................................................13

Nev. Rev. Stat. Ann. § 11.190(3)(c) ..........................................................................13

Nev. Rev. Stat. Ann. § 92A.240(1)............................................................................11

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)...........................................................................................4, 10

Fed. R. Civ. P. 12(b)(6).....................................................................................*passim*

Restatement (Second) of Torts.....................................................................................9

Restatement (Second) of Torts § 242.......................................................................9, 10

Restatement (Second) of Torts § 242(2).......................................................................9

Restatement (Second) of Torts § 242 cmt. ................................................................10

Restatement (Second) of Torts § 242 cmt. a .............................................................10

## INTRODUCTION

IGT's latest amended pleadings added breach of contract and tortious conversion claims to this patent infringement action (in which IGT is asserting twenty-one patents).  IGT's state-law claims concern two patents Aristocrat Technologies, Inc. ("Aristocrat") has asserted against IGT relating to cashless technology for slot machines:  U.S. Patent Nos. 6,896,619 ("the '619 patent") and 7,704,143 ("the '143 patent") (collectively, "the Cashless Patents").  Cashless technology enables slot machines to print and accept paper tickets that can be redeemed for cash—thereby avoiding the need for the slot machines to dispense cash when patrons are finished playing a game.  Aristocrat's Cashless Patents date back to a patent application filed in October 2000.

More than fifteen years later, and more than six months after Aristocrat asserted the Cashless Patents in this case, IGT added counterclaims asserting that the Cashless Patents are based on confidential information that IGT allegedly provided to Aristocrat.  *See* IGT's Answer and Counterclaims to ATI's, ATA's, and AI's Counterclaims (Dkt. No. 95) ("IGT's Am. Counterclaims").  These counterclaims rely on a Confidentiality Disclosure Agreement between IGT and Aristocrat.  But this agreement *prohibits* IGT from pursuing claims based on information or technology that Aristocrat develops or receives independent of IGT.  Despite this restriction, IGT's counterclaims fail to identify anything in the Cashless Patents that came from IGT, rather than Aristocrat or third parties.  The counterclaims instead contain only conclusory assertions of breach of contract and conversion.  That is not sufficient to state a claim for relief.

IGT's counterclaims also fail as a matter of law.  The October 2000 patent application from which the Cashless Patents originate was not filed by Aristocrat, but rather a third party that Aristocrat subsequently acquired.  Thus, Aristocrat could not have disclosed whatever proprietary information is allegedly included in the Cashless Patents.  Further, IGT has had notice of this alleged disclosure at least since August 2009, when the Patent Office rejected an IGT patent application on the basis of an Aristocrat patent that issued from the October 2000 application.  As a result, Nevada's three-year statute of limitations for conversion and six-year statute of limitations for breach of contract bar IGT's counterclaims.  These incontrovertible facts—which are demonstrated by public records on which the Court may rely on a motion to dismiss—provide additional reasons for dismissing IGT's counterclaims.

Accordingly, for the reasons discussed below, Aristocrat respectfully requests that the Court dismiss Counts XXIII and XXIV of IGT's Amended Counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6).

**BACKGROUND**

IGT's breach and conversion counterclaims relate to a Confidentiality Disclosure Agreement ("CDA") that an Aristocrat employee allegedly executed on February 22, 2000.  IGT's Am. Counterclaims ¶ 15 & Ex. B.  The CDA applies to "IGT Proprietary Materials," which are defined as a specific IGT cashless protocol:  "IGT's Slot Accounting System (referred to as 'SAS') protocol version 5.xx or higher, which provides the ability for communication between gaming machines and Slot Accounting Systems for player tracking, voucher redemption, as well as other functions."  *Id.*, Ex. B. The CDA requires Aristocrat to maintain the IGT Proprietary Materials in confidence and prohibits the use of the Materials "for any purpose other than as set forth in this Agreement."  *Id.*, Ex. B ¶ 2. Importantly, however, the CDA imposes no obligation on Aristocrat with respect to:

> [A]ny portion of the received information which (i) is now, or which hereafter, through no act or failure on the part of Disclosee becomes generally known or available; (ii) is lawfully furnished to Disclosee by a third party and without restriction on disclosure; (iii) is known to Disclosee at the time of receipt of such information shown by written documentation; or (iv) is independently developed by Disclosee without reference to such information as shown by written documentation.

*Id.*, Ex. B ¶ 3.  IGT alleges that it provided the SAS protocol version 5.01 to Aristocrat on or before February 28, 2000.  IGT's Am. Counterclaims ¶ 19.

On October 19, 2000, a company known as Casino Data Systems ("CDS") filed the patent application ("the October 2000 application") that eventually led to the Cashless Patents asserted in this case.  *See* Ex. C (the October 2000 application as filed); Ex. E at 1–2 & Ex. F at 1 (Patent Office records showing that the application was initially assigned to CDS).[1]  The October 2000 application and the Cashless Patents address inventive ways to improve the efficiency and security of cashless technology.

---

[1] The Court may rely on these public records on a Rule 12(b)(6) motion to dismiss.  *See infra* n.10.

*See* Def. & Counterclaimants ATI's, ATA's, and AI's Answer & Counterclaims to IGT's Revised

Second Am. Compl. (Dkt. No. 92) ("Aristocrat's Counterclaims"), Exs. 4, 5.  Aristocrat did not own

CDS at the time the October 2000 application was filed, but Aristocrat later acquired the application in

connection with its acquisition of CDS in 2001.  *See* Ex. G at 2 & Ex. H (Nevada Secretary of State

records showing articles of merger filed in 2001).  The Cashless Patents are continuations of the October

2000 application—*i.e.*, although they were filed later, they have the same disclosure as the October 2000

application and claim the benefit of its filing date.  *See* 35 U.S.C. § 120.

The October 2000 application issued as U.S. Patent No. 6,676,515 ("the '515 patent").  Ex. D.

Although the patent is not asserted in this case, IGT has known of the '515 patent—and hence the

October 2000 application—since August 2009, when the Patent Office relied on the '515 patent to reject

a pending IGT patent application.  *See* Ex. A at 6–8.[2]  IGT discussed the '515 patent in its response to

the rejection.  *See* Ex. B at 8–10.  Notably, the named inventor of this IGT patent application is the same

employee who allegedly executed the CDA on behalf of IGT.  *See* Ex. A at 1; IGT's Am. Counterclaims

¶ 15.

Aristocrat asserted the Cashless Patents in its counterclaims filed on June 8, 2015.  Dkt. No. 38

¶¶ 78–90, 91–103 & Exs. 4, 5.  IGT filed its Amended Counterclaims, in which IGT added its breach of

contract and conversions claims, on January 28, 2016.[3]  IGT's Amended Counterclaims generally allege

that "Aristocrat breached the [CDA]" by "disclosing IGT's Proprietary Information in its patent filings."

*Id.* ¶ 21.  The Amended Counterclaims provide a similarly general statement of the conversion claim:

"In filing patent applications and obtaining patents using IGT's Proprietary Information, Aristocrat has

wrongfully converted IGT's intellectual property."  *Id.* ¶ 97.  IGT discusses the Cashless Patents in a

---

[2] As explained in note 10 below, the Court may rely upon these Patent Office records in deciding this motion to dismiss.

[3] IGT sought leave to amend its counterclaims in a joint motion filed on December 15, 2015—the deadline for motions for leave to amend pleadings. Dkt. No. 69 at 4; Dkt. No. 80.  The version of the Amended Counterclaims that IGT filed on January 28 (Dkt. No. 95) contained several changes from the version attached to the joint motion.  IGT has filed a stipulation seeking permission to file a corrected version of the Amended Counterclaims.  Dkt. No. 100.  The citations herein to the Amended Counterclaims are to the corrected version attached to the stipulation (Dkt. No. 100-1).

single paragraph, in which IGT refers to the October 2000 application and then alleges, albeit "[u]pon and belief," that Patent Office filings in connection with the Cashless Patents "disclosed information that IGT had provided to Aristocrat under the [CDA]." *Id.* ¶ 20.  IGT's Amended Counterclaims do not identify the "IGT Proprietary Information" that was purportedly present in the October 2000 application and the Cashless Patents.

## APPLICABLE LEGAL STANDARD

Rule 8 requires a party to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  If the party fails to meet its obligations under Rule 8, the cause of action must be dismissed for failing to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Because a Rule 12(b)(6) motion in a patent case "raises a purely procedural issue," courts apply the law of the regional circuit.  *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.  A mere possibility that the asserting party might be able to establish "some 'set of [undisclosed] facts' to support recovery" is not sufficient.  *Twombly*, 550 U.S. at 561.  Rather, the complaint must allege facts that "raise a right to relief above the speculative level." *Id.* at 555.

## ARGUMENT

IGT's Amended Counterclaims should be dismissed pursuant to Rule 12(b)(6) because they fail to identify the proprietary information that Aristocrat allegedly disclosed or misused.  As such, the Amended Counterclaims do not include "factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for [breach of contract or conversion]." *Iqbal*, 556 U.S. at 678.  In addition, IGT's breach of contract and conversion counterclaims fail as a matter of law for multiple reasons.

I. **IGT Does Not Allege a Plausible Breach of Contract.**

To establish a breach of contract under Nevada law, "a plaintiff must show four elements: (1) formation of a valid contract; (2) performance or excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages." *Gibbons v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 2:14–CV–586–JCM–VCF, 2015 WL 789694, at *3 (D. Nev. Feb. 25, 2015) (quoting *Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180 (D. Nev. 2011)) (additional citations omitted).[4]  A party alleging breach of contract must plead facts showing that all four elements are plausibly met. *Id.* at *2. Here, IGT has failed to allege facts that plausibly show a material breach by the defendant—*i.e.*, a use of information in violation of the CDA.

As an initial matter, IGT's conclusory assertions that Aristocrat "breached the [CDA]," IGT's Am. Counterclaims ¶¶ 21, 92, and "used IGT's Proprietary Information to IGT's detriment," *id.* ¶ 23, are entitled to no weight. *See Iqbal*, 556 U.S. at 679 ("[C]onclusions . . . are not entitled to the assumption of truth."); *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) (allegation that defendant had assumed rights and obligations under a contract was a legal conclusion and thus was insufficient to prevent dismissal of breach claim).  IGT's unsupported allegation that the Cashless Patents "disclosed information that IGT had provided to Aristocrat under the [CDA]," is similarly insufficient.  IGT's Am. Counterclaims ¶ 20.  The Ninth Circuit has instructed that courts are not to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citations omitted).  Not only is this statement conclusory, it is made "[u]pon information and belief."  And "[i]n the post-*Twombly* and *Iqbal* era, pleading on information and belief, without more, is insufficient." *Solis v. City of Fresno*, No. 1:11–cv–00053, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012); *see also Mills v. Bristol-Myers Squibb Co.*, No. CV 11–00968, 2011 WL 4708850, at *2, 3 (D. Ariz. Oct. 7, 2011) (dismissing claims supported by allegations made "on information and belief"); *Elan Microelectronics Corp. v. Apple, Inc.*, No. C 09–01531, 2009 WL 2972374, at *2–4 (N.D. Cal. Sept. 14, 2009) (same).

---

[4] The CDA states that it shall be interpreted under Nevada law.  IGT's Am. Counterclaims, Ex. B ¶ 5.

1     The few facts that are alleged in the Amended Counterclaims do not establish a plausible breach

2  of the CDA.  IGT alleges that (1) it provided a protocol related to cashless technology to Aristocrat

3  pursuant to the CDA, *see* IGT's Am. Counterclaims ¶¶ 12–19, and (2) Aristocrat's Cashless Patents

4  relate to cashless technology, *see id.* ¶ 20.  But these facts are insufficient to establish a breach of the

5  CDA because the CDA *permitted* Aristocrat to pursue its own cashless technology.  The CDA was a

6  limited agreement that applied only to a specific cashless protocol (version 5.xx or higher of the SAS

7  protocol)—not to cashless technology generally—and the CDA stated that it "shall impose no

8  obligation" on information Aristocrat possesses, creates, or receives independently of IGT's disclosure.

9  *Id.*, Ex. B ¶ 3.  Accordingly, the mere filing of a patent application on cashless technology is not enough

10  to infer that the application contained IGT confidential information in breach of the CDA, as opposed to

11  information Aristocrat independently developed or acquired.  Because IGT's allegation is consistent

12  with conduct permitted under the CDA, "it stops short of the line between possibility and plausibility of

13  'entitle[ment] to relief.'"  *Twombly*, 550 U.S. at 557 (citation omitted) (holding that a bare allegation of

14  parallel conduct was not enough to plausibly infer an anti-competitive agreement, as opposed to mere

15  independent action).

16     "[T]o survive a 12(b)(6) motion," IGT was required to "identify the confidential information that

17  was allegedly disclosed" in breach of the CDA.  *Cascade Designs Inc. v. Windcatcher Tech. LLC*, No.

18  C15–1310–TSZ, 2016 WL 374564, at *3 (W.D. Wash. Feb. 1, 2016) (internal citations and quotations

19  omitted).  District courts, including in the Ninth Circuit, have routinely dismissed claims for breach of

20  non-disclosure agreements pursuant to Rule 12(b)(6) where the complaints fail to identify the

21  confidential information allegedly disclosed or misused.  *See, e.g.*, *id.* at *2–3; *Am. Registry, LLC v.*

22  *Hanaw*, No. 2:13–CV–352–FtM29, 2013 WL 6332971, at *3–4 (M.D. Fla. Dec. 5, 2013) ("Plaintiff

23  need not disclose secret information in its pleadings, but must identify it with enough specificity as to

24  give defendants notice of what was misappropriated."); *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d

25  983, 990 (S.D. Cal. 2012) (dismissing breach of contract counterclaim where "[counterclaim plaintiff]

26  ha[d] not pled what [its] 'trade secrets and/or confidential information' are or whether the confidential

27  information falls within the terms of the agreements," and "ha[d] not pled facts to establish a breach of

28  the Employment Agreement or NDA"); *Farhang v. Indian Inst. of Tech., Kharagpur*, No. C–08–02658

RMW, 2010 WL 2228936, at *6 (N.D. Cal. June 1, 2010) (conclusory allegation that defendants breached a non-disclosure agreement by "disclosing plaintiffs' IP and other confidential information to [plaintiffs' competitors] in the development of similar mobile technology" held insufficient to state a claim); *Am. Petroleum Inst. v. Technomedia Int'l, Inc.*, 699 F. Supp. 2d 258, 265 (D.D.C. 2010).

In *Cascade Designs*, for instance, the defendant counterclaimed that the plaintiff had misappropriated its "confidential and proprietary information" pertaining to the "design, manufacture and sale" of defendant's AirPad.  *Cascade Designs*, 2016 WL 374564, at *2.  Observing that "significant information regarding the AirPad design is available in the public record," the court held that the "defendant's failure to more specifically identify what 'trade secrets' or 'confidential and proprietary information' plaintiff allegedly misappropriated is fatal to [the defendant's] present claim."  *Id.* at *2–3.  Similarly, in *American Petroleum Institute*, Technomedia had alleged that API, in violation of the parties' non-disclosure agreement, disclosed Technomedia's confidential information to a third party, TWL.  *Am. Petroleum Inst.*, 699 F. Supp. 2d at 262.  The court held that the failure to identify any specific trade secrets was fatal in light of the fact that Technomedia had also shared its trade secrets with TWL:  "In the absence of factual allegations showing that the trade secrets supplied to API were in fact different from the trade secrets supplied to TWL and that API disclosed trade secrets to TWL that had not already been disclosed to TWL, TechnoMedia's right to relief remains entirely speculative."  *Id.* at 265.

Similarly, here, IGT makes no attempt to identify any proprietary information from its "SAS protocol version 5.01," IGT's Am. Counterclaims ¶ 19, that was allegedly disclosed to the Patent Office in connection with the Cashless Patents, thereby leaving Aristocrat without notice of the basis for the claim.[5]  As in the cases cited above, this deficiency is fatal to IGT's claim—particularly given that the

---

[5] IGT's Amended Counterclaims repeatedly refer to "IGT's Proprietary Information."  IGT's Am. Counterclaims ¶¶ 21, 22, 23, 92, 97.  This term, however, is not defined in the Counterclaims, nor is it used in the CDA.  *See id.*, Ex. B (referring to "IGT Proprietary Materials").

CDA did not apply to cashless technology that Aristocrat developed or acquired independent of IGT.[6]

Accordingly, because "the well-pleaded facts do not permit the [C]ourt to infer more than the mere

possibility of misconduct, the [Amended Counterclaims have] alleged—but [they have] not 'show[n]'—

'that [IGT] is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8).[7]

## II.    IGT Does Not, and Cannot, Sufficiently Allege a Tortious Conversion Claim.

IGT's Amended Counterclaims allege that Aristocrat "converted IGT's intellectual property" by

"filing patent applications and obtaining patents using IGT's Proprietary Information."  IGT's Am.

Counterclaims ¶ 97.  However, IGT does not allege facts showing that its "Proprietary Information"

constitutes a property interest that is capable of being converted.  In fact, the few factual allegations

present in the counterclaims make clear that this "Proprietary Information" does not give rise to a claim

for conversion under Nevada law.  IGT's conversion claim also fails because IGT has not identified the

information that allegedly was converted.

### A.    IGT Has Failed to Allege a Property Interest Capable of Being Converted Under Nevada Law.

Although Nevada has extended the tort of conversion to intangible property, the Nevada

Supreme Court has imposed limits on the types of intangible property that may be converted.  *See M.C.*

*Multi-Family Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193 P.3d 536, 538 (Nev. 2008).  An alleged

property interest must first satisfy a three-part test borrowed from California law:  "(1) there is an

interest capable of precise definition, (2) the interest is capable of exclusive possession or control, and

(3) the putative owner has established a legitimate claim to exclusivity."  *Id.* at 543 (citing *Kremen v.*

---

[6]  Moreover, as in *Cascade Designs*, IGT itself allegedly disclosed information about cashless technology to the public.  For instance, IGT's letter asking the game developers to execute the CDA acknowledged that the developers were "already aware" that IGT had a cashless protocol and "[t]he technology utilizing this protocol" had been demonstrated at a 1999 conference.  IGT's Am. Counterclaims, Ex. A (also acknowledging that at least three companies were already manufacturing printers for cashless technologies); *see also* IGT's Am. Counterclaims ¶ 12 ("In 1999, IGT presented its 'EZ-Pay' system, which contained the latest cashless gaming and TITO innovations, to slot manufacturers and casino representatives at the World Gaming Congress & Expo.").

[7]  Notably, IGT's allegation that the Cashless Patents include confidential information appears to be at odds with IGT's invalidity contentions, which state that the cashless patent applications "disclose[] the very same invention IGT had previously invented, shared publicly in 1999, and disclosed to Aristocrat in February 2000."

*Cohen*, 337 F.3d 1024, 1031 (9th Cir. 2003) (applying California law)).  In addition, the alleged interest must meet "the Restatement (Second) of Torts rule defining conversion of 'intangible personal property.'"  *Id.* at 538; *see also id.* at 543.  Neither requirement is satisfied here.

*First*, IGT does not make any allegations—conclusory or otherwise—in support of the three-part test described above.  This alone is reason to dismiss the claim.  Further, the alleged property interest here—some unspecified information subject to the CDA—would not satisfy this test, at least because such information is not "capable of exclusive possession or control."  *M.C. Multi-Family Dev.*, 193 P.3d at 543.  As discussed above, the CDA expressly acknowledged that IGT had no right to "any portion of the received information" that became "generally known or available" or that was lawfully possessed or developed by Aristocrat or third parties.  IGT's Am. Counterclaims, Ex. B ¶ 3.  As such, this case is a far cry from the contractor's license or the website domain name registration that the Nevada Supreme Court and the Ninth Circuit, respectively, have found sufficient.  *See M.C. Multi-Family Dev.*, 193 P.3d at 543 (contractor's license satisfied this requirement because "[a statute] allows only the individual or entity named on the license to legally use it, and because the license is capable of [the contractor's] exclusive control"); *Kremen*, 337 F.3d at 1030 (explaining that "[o]wnership [of a domain name] is exclusive in that the registrant alone" decides where a user is directed when the domain name is entered into a browser).

*Second*, IGT's claim does not meet the requirements of the Restatement (Second) of Torts § 242, which "outlines when intangible personal property can be converted."  *M.C. Multi-Family Dev.*, 193 P.3d at 543.  The Restatement § 242 provides for liability only where an intangible right is "merged" into a document:  "One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted."  Restatement (Second) of Torts § 242(2); *see also id.* cmt. f ("Thus far the liability stated in Subsection (2) has not been extended beyond the kind of intangible rights which are customarily represented by and merged in a document.").  As the Ninth Circuit has explained, "[a]n intangible is 'merged' in a document when, 'by the appropriate rule of law, the right to the immediate possession of a chattel and the power to acquire such possession is *represented by* the document,' or when 'an intangible obligation is *represented by* the document, which is regarded as equivalent to the

obligation.'" *Kremen*, 337 F.3d at 1031 (emphases in original) (quoting Restatement (Second) of Torts § 242 cmt. a). In *M.C. Multi-Family Development*, for example, the Nevada Supreme Court found that "the intangible rights afforded by the contractor's license are merged into the license document" because "the document itself is representative of the right of the named individual or entity to engage in approved instances of construction and development." 193 P.3d at 543.[8]

IGT's alleged intangible right—confidential information concerning IGT's cashless protocol— does not meet the merger test because "[t]his information, albeit in document form, is not an intangible property right *merged* in a document like a promissory note or a stock certificate." *Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love LLP*, 617 F. Supp. 2d 447, 454–55 (W.D. Va. 2008) (emphasis in original), *aff'd*, 360 F. App'x 400 (4th Cir. 2010). The Restatement itself recognizes that this type of intangible is not subject to a conversion claim: "There can be no conversion of… intangible rights [like] the goodwill of a business or the *names of customers*." Restatement (Second) of Torts § 242 cmt. f (emphasis added); *see also id.* Reporter's Notes ("As to other intangible rights, it is generally agreed that there can be no conversion [of] names of customers,… [an] idea… [or] *confidential information*." (emphasis added)). Thus, applying the merger requirement, courts have refused to allow conversion claims like the one IGT asserts here. *See, e.g.*, *Hinkle Oil & Gas*, 617 F. Supp. 2d at 454–55 ("Hinkle's claim fails because it alleges conversion of 'confidential and proprietary *information*,' not any tangible chattel, nor any intangible right customarily merged in a document...." (emphasis in original)); *Ne. Coating Techs., Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1324 (Me. 1996) (rejecting claim of conversion based on the information in a prospectus, because the information was not one "customarily merged in or identified with some document").

Likewise, IGT's proprietary information does not meet the Restatement's merger requirement, and IGT's tortious conversion claim therefore fails as a matter of law.

---

[8] The Restatement provides a number of other examples of intangible rights that may be merged into documents, including promissory notes, checks, bonds, stock certificates, bills of lading and insurance policies. *See* Restatement (Second) of Torts § 242, Reporter's Notes.

### B.    IGT Fails to Allege Facts Showing What Information Aristocrat Allegedly Converted.

Conversion under Nevada law requires "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." *M.C. Multi-Family Dev.*, 193 P.3d at 542–43 (internal quotation marks and emphasis omitted).  Even assuming, *arguendo*, that IGT's proprietary information is capable of being converted, IGT has failed to identify any proprietary information that Aristocrat allegedly used "[i]n filing patent applications and obtaining patents."  IGT's Am. Counterclaims ¶ 97.  *See also supra* § I. As with IGT's breach of contract claim, this failure dooms IGT's conversion claim because—absent an identification of the information allegedly used—IGT's Amended Counterclaims "do not permit the [C]ourt to infer more than the mere possibility" that Aristocrat exercised wrongful dominion over any of IGT's proprietary information.  *Iqbal*, 556 U.S. at 679.  Accordingly, IGT's Amended Counterclaims fail to state a claim for conversion under Nevada law.

### III.    IGT's Amended Counterclaims Fail As a Matter of Law Because the Conduct at Issue Was Not Committed by Aristocrat.

Both IGT's breach of contract and conversion counterclaims rest on the premise that the October 2000 application—*i.e.*, the application to which the Cashless Patents claim priority—disclosed (unspecified) information subject to the CDA.  *See* IGT's Am. Counterclaims ¶ 20.  Patent Office records, however, demonstrate that it was CDS—not Aristocrat—that filed the October 2000 application.  *See* Ex. E at 1–2 & Ex. F at 1 (showing that the application was initially assigned to CDS).[9] Aristocrat did not acquire CDS, and the rights to the October 2000 application, until 2001.  *See* Ex. G at 2 & Ex. H (showing that CDS filed its articles of merger with the Nevada Secretary of State on June 29, 2001); Nev. Rev. Stat. Ann. § 92A.240(1) ("A merger, conversion or exchange takes effect … [a]t the time of the filing of the articles of merger, conversion or exchange with the Secretary of State;  [or] [u]pon a later date and time as specified in the articles, which date must not be more than 90 days after

---

[9] IGT alleges that "Aristocrat employees" filed the October 2000 application.  IGT's Am. Counterclaims ¶ 20.  This incorrect allegation should be disregarded because it is contradicted by the documents cited herein.  *See Johnson*, 793 F.3d at 1008 ("[W]e need not accept as true allegations contradicting documents that are referenced in the complaint." (citation omitted)).

the date on which the articles are filed….").  The Court may "treat [these] document[s] as part of the

complaint, and . . . assume that [their] contents are true for purposes of a motion to dismiss under Rule

12(b)(6)."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (citation and internal quotations

omitted).[10]

In light of these facts, IGT's breach of contract and conversion counterclaims fail as a matter of

law.  Put simply, because Aristocrat did not file the October 2000 application, the alleged disclosure of

confidential information in that application cannot constitute breach of contract or conversion by

Aristocrat.  Furthermore, even assuming, *arguendo*, that the application included some IGT confidential

information, the CDA did not bar Aristocrat from using that information once it had been disclosed

through no fault of Aristocrat.  *See* IGT's Am. Counterclaims, Ex. B ¶ 3 ("The disclosure by IGT to

Disclosee shall impose no obligation upon Disclosee with respect to any portion of the received

information which (i) is now, or which hereafter, through no act or failure on the part of Disclosee

becomes generally known or available. . . .").  Accordingly, IGT's conclusory allegations that

subsequent actions by Aristocrat breached the CDA—*e.g.*, by "obtaining patents using IGT's

_____

[10] There are two grounds for relying on these documents for purposes of this Rule 12(b)(6) motion.
First, IGT's counterclaims "necessarily rel[y] on" the October 2000 application and related filings, and
their authenticity cannot reasonably be disputed.  *Johnson*, 793 F.3d at 1007.  Second, the Court may
rely upon the Patent Office and Nevada Secretary of State records as judicially noticeable public
documents.  *See Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012) ("[A]
court may take judicial notice of matters of public record without converting a motion to dismiss into a
motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute."
(internal quotations and citation omitted)); *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th
Cir. 1986) ("On a motion to dismiss . . . a court may take judicial notice . . . of records and reports of
administrative bodies."); *see also Wagenaar v. Robison*, No. 2:13–CV–01202–APG, 2014 WL 4206703,
at *1 n.5 (D. Nev. Aug. 22, 2014) ("The Court may take judicial notice of the Secretary of State's entity
information." (citing *Smelt v. Cnty. of Orange*, 447 F.3d 673, 676 n.4 (9th Cir. 2006)); *Hackett v.
OneWest Bank FSB*, No. 2:12–CV–01031–MMD, 2012 WL 6016740, at *3 n.3 (D. Nev. Dec. 3, 2012)
(taking judicial notice of various documents including "foreign corporation['s] business license on the
Nevada Secretary of State business entity search website, available at
https://nvsos.gov/sosentitysearch/"); *Openwave Sys. Inc. v. Myriad France S.A.S.*, C10–02805 WHA,
2011 WL 1832999, at *4 (N.D. Cal. May 13, 2011) (taking judicial notice of patents and patent
application that were at issue in the case, noting that the items were "matters of public record"); *Dahon
N. Am., Inc. v. Hon*, 2:11–CV–05835–ODW, 2012 WL 1413681, at *8 n.4 (C.D. Cal. Apr. 24, 2012)
(taking judicial notice of the Patent Office's trademark assignment website because it is an "official
record memorializing ownership of the [mark], and is published by a government organization—the
USPTO").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Proprietary Information" and "filing a patent infringement action against IGT," IGT's Am. Counterclaims ¶¶ 22, 23—fail as a matter of law.[11]  IGT's counterclaims for breach of contract and conversion against Aristocrat should be dismissed for this reason alone.

## IV.    IGT's Amended Counterclaims Fail As a Matter of Law Because They Are Time Barred Under Nevada's Statute of Limitations.

Federal courts addressing state-law claims must apply state statutes of limitation, including any tolling provisions.  *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 745–46, 752–53 (1980); *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533–34 (1949).  Under Nevada law, the statute of limitations for a conversion claim is three years.  *See* Nev. Rev. Stat. Ann. § 11.190(3)(c); *Hudnall v. Panola Cnty.*, No. 2:06–CV–0490–RCJ–LRL, 2007 WL 1521446, at *4 (D. Nev. May 22, 2007).  IGT's breach of contract claim is subject to a six-year statute of limitations.  *See* Nev. Rev. Stat. Ann. § 11.190(1)(b); *Asian Am. Entm't Corp. v. Las Vegas Sands, Inc.*, 324 F. App'x 567, 569 (9th Cir. 2009). The Nevada Supreme Court has recognized both the "general rule" of accrual of a cause of action as well as the "discovery rule."  *See Petersen v. Bruen*, 792 P.2d 18, 20 (Nev. 1990).

Dismissal of a claim based on the applicable statute of limitations is appropriate pursuant to Rule 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim."  *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995); *see, e.g.*, *Hudnall*, 2007 WL 1521446, at *4.  In the present case, the allegations in the counterclaims, along with other documents on which the Court may rely, make clear that IGT's breach and conversion claims are untimely under the general rule and the discovery rule.

"The general rule concerning statutes of limitation is that a cause of action accrues when the wrong occurs and a party sustains injuries for which relief could be sought."  *Petersen*, 792 P.2d at 20. Here, the alleged disclosure of confidential information in the October 2000 application took place more than 15 years ago.  IGT's Am. Counterclaims ¶ 20.  This is well beyond the three-year period for conversion claims and the six-year period for breach of contract claims.

---

[11] In any event, these conclusory allegations are insufficient because they are unsupported by any facts.

The claims are also untimely under the discovery rule.  "Under the discovery rule, the statutory period of limitations is tolled until the injured party discovers or reasonably should have discovered facts supporting a cause of action."  *Petersen*, 792 P.2d at 20.  Although IGT has not pled any facts relating to its discovery of Aristocrat's alleged wrongdoing, nor of the circumstances excusing delayed discovery, Patent Office records demonstrate that IGT had notice of the alleged disclosure of its confidential information more than six years before it brought its breach of contract and conversion counterclaims.[12]  During the prosecution of an IGT patent application, a patent examiner cited and discussed the '515 patent—which issued from the October 2000 application and thus includes the same disclosure—in a rejection dated August 28, 2009.  *See* Ex. A at 6–8.  Subsequently, on December 28, 2009, IGT responded and made arguments about the disclosure of the '515 patent—*i.e.*, the very same disclosure that IGT now claims includes its confidential information.  *See* Ex. B at 8–10.  Furthermore, the named inventor on this IGT patent application is Ali Saffari, the same employee who allegedly executed the CDA on behalf of IGT.  *See* Ex. A at 1; IGT's Am. Counterclaims ¶ 13 & Ex. B.

These public records establish that IGT had notice of the '515 patent—and thus any confidential information allegedly disclosed in the October 2000 application—at least as of August 28, 2009.[13]  IGT did not assert its breach of contract and conversion counterclaims until more than six years later.  *See* Dkt. No. 80 (joint motion to file amended pleadings filed on December 15, 2015); Dkt. No. 95 (amended counterclaims filed on January 28, 2016).  Accordingly, IGT cannot establish that the statute of limitations was sufficiently tolled under the discovery rule, and the counterclaims should be dismissed as time barred.  *See Hudnall*, 2007 WL 1521446, at *4 (dismissing claims because "[w]hether the

---

[12] The Court may rely on these records as judicially noticeable public documents.  *See* supra n.10; *see also Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (referring to prosecution history as an "undisputed public record") (internal quotation marks omitted), *aff'd*, 517 U.S. 370 (1996).

[13] IGT may also have had constructive notice much earlier, because both of the applications that led to the Cashless Patents were published well before the limitations period.  *See* Aristocrat's Am. Counterclaims, Ex. 5 (showing that the '619 patent was published on September 12, 2002 and issued on May 24, 2005); *id.*, Ex. 4 (showing that the '143 patent was published on July 7, 2005 and issued on April 27, 2010).  *See Hartley Pen Co. v. Lindy Pen Co.*, 16 F.R.D. 141, 157 (S.D. Cal. 1954) ("It is held that 'issuance of a patent and recordation in the Patent Office constitutes notice to the world of its existence.'") (quoting *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 393 (1936)) (additional citations omitted).

[c]ourt applies the general rule or the "discovery rule" to the statute of limitations, Plaintiffs' claims

[were] time barred").

**CONCLUSION**

For the reasons stated above, Aristocrat respectfully requests that the Court dismiss Counts

XXIII and XXIV of IGT's Amended Counterclaims.  The dismissal should be with prejudice, because

the deadline for amending pleadings has passed and, in any event, no additional facts could save IGT's

breach of contract and conversion counterclaims.  *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

2000) (a court need not permit amendment if "it determines that the pleading could not possibly be

cured by the allegation of other facts" (internal quotation marks and citation omitted)); *Nunes v.*

*Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003) ("Futility alone can justify the denial of a motion for leave

to amend.").


DATED:   February 16, 2016                        Respectfully submitted,


                                                  */s/ Peter A. Swanson*
                                                  NICHOLAS J. SANTORO
                                                  SANTORO WHITMIRE, LTD.
                                                  10100 W. Charleston Blvd., Suite 250
                                                  Las Vegas, Nevada  89135
                                                  Telephone:  (702) 948-8771
                                                  Facsimile:  (702) 948-8773
                                                  E-mail:  nsantoro@santoronevada.com

                                                  ROBERT T. HASLAM
                                                  COVINGTON & BURLING LLP
                                                  333 Twin Dolphin Drive, Suite 700
                                                  Redwood Shores, CA 94065
                                                  Telephone:  (650) 632-4700
                                                  Facsimile:  (650) 632-4800
                                                  E-mail:  rhaslam@cov.com

                                                  GARY M. RUBMAN
                                                  PETER A. SWANSON
                                                  COVINGTON & BURLING LLP
                                                  One CityCenter, 850 Tenth Street, NW
                                                  Washington, DC 20001
                                                  Telephone:  (202) 662-6000
                                                  Facsimile:  (202) 662-6291

E-mail:  grubman@cov.com,
pswanson@cov.com

*Attorneys for Defendant/Counterclaim*
*Plaintiffs Aristocrat Technologies, Inc.,*
*Aristocrat Technologies Australia Pty Ltd.,*
*and Aristocrat International Pty Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2016, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing COUNTERCLAIM DEFENDANTS ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., AND ARISTOCRAT INTERNATIONAL PTY LTD.'S MOTION TO DISMISS COUNTERCLAIM PLAINTIFF IGT'S BREACH OF CONTRACT AND CONVERSION CLAIMS, postage prepaid (if U.S. Mail) and addressed to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.


*/s/ Rachel Jenkins*

An employee of Santoro Whitmire