NICHOLAS J. SANTORO (Nev. Bar No. 532)
SANTORO WHITMIRE, LTD.
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada 89135
Telephone: (702) 948-8771
Facsimile: (702) 948-8773
E-mail: nsantoro@santoronevada.com

ROBERT T. HASLAM (*pro hac vice*)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800
E-mail: rhaslam@cov.com

GARY M. RUBMAN (*pro hac vice*)
PETER A. SWANSON (*pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000
Facsimile: (202) 662-6291
E-mail: grubman@cov.com, pswanson@cov.com

Attorneys for Defendant/Counterclaim Plaintiffs ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., and ARISTOCRAT INTERNATIONAL PTY LTD.

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IGT,<br><br>    Plaintiff,<br><br>    v.<br><br>ARISTOCRAT TECHNOLOGIES, INC.,<br><br>    Defendant.<br><br>ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., and ARISTOCRAT INTERNATIONAL PTY LTD.,<br><br>    Counterclaim Plaintiffs,<br><br>    v.<br><br>IGT,<br><br>    Counterclaim Defendant. | Case No.: 2:15-cv-00473-GMN-(GWF)<br><br>**COUNTERCLAIM DEFENDANTS ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., AND ARISTOCRAT INTERNATIONAL PTY LTD.'S MOTION TO STRIKE COUNTERCLAIM PLAINTIFF IGT'S AMENDED ANSWER AND SECOND AMENDED COUNTERCLAIMS**<br><br>**(Oral Argument Requested)** |

# **TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ........................................................................................................2

ARGUMENT .................................................................................................................................6

I.    The Court's Leave Is Required to Amend the Pleadings. ................................................6

    A.    IGT Must Seek Leave to Amend After the Scheduling Order Deadline to Amend. ..................................................................................................................6

    B.    IGT Is Not Entitled to Amend "As a Matter of Course" Because IGT Has Previously Amended Its Counterclaims. ............................................................8

II.    IGT's Amended Pleading Should Be Stricken Because It Has Not Obtained Leave to Amend. ..............................................................................................................9

    A.    Even If IGT Had Sought Leave to Amend, It Could Not Show Good Cause. ..................10

    B.    Absent an Explanation of Why IGT's Amendment Overcomes the Motion to Dismiss, the Amendment Should Be Denied As Futile. .......................................11

III.    Aristocrat Should Not Be Required to Respond to IGT's Amended Counterclaims. ....................12

CONCLUSION .............................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................... 10

*Cooley v. Marshal*,
  No. 2:09-cv-00559-RLH-GWF, 2011 WL 3240453 (D. Nev. July 28, 2011) ................ 6, 9

*In re Crazy Eddie Sec. Litig.*,
  792 F. Supp. 197 (E.D.N.Y. 1992) ..................................................................................... 9

*Elliott v. Foufas*,
  867 F.2d 877 (5th Cir. 1989) ........................................................................................... 8, 9

*Evans v. Inmate Calling Solutions*,
  No. 3:08-cv-353-GMN-VPC, 2010 WL 4974135 (D. Nev. Dec. 1, 2010) ........................ 6

*Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*,
  No. 2:05-cv-1059-KJD-GWF, 2007 WL 1434893 (D. Nev. May 14, 2007) .................... 6

*Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*,
  495 F.3d 1378 (Fed. Cir. 2007) ........................................................................................ 12

*Gestetner Corp. v. Case Equip. Co.*,
  108 F.R.D. 138 (D. Me. 1985) .......................................................................................... 9

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ..................................................................................... *passim*

*Jones v. United Airlines*,
  No. 11 C 6374, 2012 WL 6216741 (N.D. Ill. Dec. 13, 2012) ........................................... 9

*Kassner v. 2nd Ave. Delicatessen Inc.*,
  496 F.3d 229 (2d Cir. 2007) .............................................................................................. 7

*Liguori v. Hansen*,
  Case No. 2:11-cv-00492-GWF, 2016 WL 756526 (D. Nev. Feb. 25, 2016) ........ 9, 10, 11, 12

*Parker v. Columbia Pictures Indus.*,
  204 F.3d 326 (2d Cir. 2000) (Sotomayor, J.) .................................................................... 7

*Vasquez v. Johnson Cty. Hous. Coal., Inc.*,
  No. CIV.A. 03-2147-CM, 2003 WL 21479186 (D. Kan. June 16, 2003) .................... 9, 12

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  715 F.3d 716 (9th Cir. 2013), *aff'd sub nom.*, *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct.
  1591 (2015) ..................................................................................................................11

**Other Authorities**

3-16 James Wm. Moore, *Moore's Federal Practice* - Civil § 16.14[1][a]
  (Matthew Bender 3d ed. 2015) ......................................................................................7

6A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1522.2 (3d ed.
  2015) ..............................................................................................................................7

Fed. R. Civ. P. 6(d) ...............................................................................................................3

Fed. R. Civ. P. 12(e) .............................................................................................................9

Fed. R. Civ. P. 15 ......................................................................................................... *passim*

Fed. R. Civ. P. 15(a) ........................................................................................................7, 9

Fed. R. Civ. P. 15(a)(1) ............................................................................................6, 7, 8, 9

Fed. R. Civ. P. 15(a)(1)(B) ................................................................................................6, 8

Fed. R. Civ. P. 15(a)(2) .........................................................................................................8

Fed. R. Civ. P. 15(a)(3) .........................................................................................................3

Fed. R. Civ. P. 16 ......................................................................................................... *passim*

Fed. R. Civ. P. 16(b) ....................................................................................................6, 7, 10

Fed. R. Civ. P. 16(b)(3)(A) ...................................................................................................6

Fed. R. Civ. P. 16(b)(4) .........................................................................................................6

## INTRODUCTION

The Court's scheduling order in this case set a deadline of December 15, 2015 for amending pleadings. On the eve of this deadline, IGT amended its counterclaims to add allegations of breach of contract and conversion. Aristocrat moved to dismiss these allegations for failure to state a claim. Rather than oppose Aristocrat's motion, IGT filed—without leave of Court—a new set of amended counterclaims on March 4, nearly three months after the deadline for amendments to pleadings. IGT's unilateral amendment of its counterclaims after the deadline violates the Court's scheduling order and the Federal Rules.

IGT's post-deadline counterclaims make a number of new allegations—including new claims based on a never-before-mentioned contract—in an apparent attempt to remedy the defects that prompted Aristocrat's motion to dismiss. But all of these allegations could have been made earlier had IGT been diligent. IGT's breach and conversion counterclaims are based on the alleged disclosure of confidential information in a patent application that was filed in 2000 and that IGT has known about since at least 2009. Moreover, this patent application first surfaced in this litigation in June of 2015, when Aristocrat asserted two patents that claim priority to the 2000 patent application. Not only did IGT then wait six months to raise its breach and conversion counterclaims (until just days before the December 15 deadline), but the counterclaims that IGT asserted at that time were deficient in several respects (enough that IGT chose not to oppose Aristocrat's motion to dismiss). In light of IGT's failure to diligently assert and prepare its counterclaims—coupled with its attempt to fix the counterclaims through an improper amendment after the deadline—that amendment should be stricken.

IGT's latest attempt to expand this already complex case comes on the heels of the Court's recent case management order, which, in an effort to resolve the case in an efficient manner, required a limited number of claims to proceed in an initial phase. Following the Court's order, the parties met and conferred on the scope of the first phase and a revised case schedule. Although Aristocrat's motion to dismiss was pending during the meet-and-confer process, IGT never mentioned that it intended to amend (and expand) its breach and conversion counterclaims. Nor did IGT ask for a new deadline to amend the pleadings. Instead, after securing Aristocrat's agreement that the first phase would include the breach and conversion counterclaims, IGT proceeded to file its amended counterclaims without

leave of Court and without notice to Aristocrat. Rule 16 is intended to prevent parties from using these types of tactics. IGT has already exercised numerous opportunities to amend its pleadings and expand the scope of the case (including doubling the number of patents IGT is asserting). Now that the deadline to amend has passed, it is time for IGT to stop adding claims and to focus on resolving the claims already pled.

Accordingly, for the reasons discussed below, Aristocrat respectfully requests that the Court strike IGT's Second Amended Counterclaims (Dkt. No. 113) and proceed to decide Aristocrat's pending motion to dismiss IGT's counterclaims as they originally were pled.

**FACTUAL BACKGROUND**

This lawsuit began one year ago when IGT filed its complaint for patent infringement on March 16, 2015. (Dkt. No. 1.) After Aristocrat initially answered and asserted patent infringement counterclaims, including for infringement of U.S. Patent Nos. 6,896,619 ("the '619 patent") and 7,704,143 ("the '143 patent") (collectively, "the Cashless Patents"), on June 8, 2015 (Dkt. No. 38), IGT asserted its own counterclaims (Dkt. No. 50).[1] This initial round of pleadings was followed by a second round of pleadings when IGT filed its First Amended Complaint on September 25, 2015 (Dkt. No. 73). In these two rounds of pleadings, which took place over the first eight months of the lawsuit, IGT's counterclaims were limited to requests for declarations of non-infringement and invalidity with respect to Aristocrat's asserted patents. (*Id.*)

Just before the expiration of the December 15, 2015 deadline to amend the pleadings set by this Court's Scheduling Order (Dkt. No. 69), both sides sought to amend their pleadings. In addition to adding four patents to its complaint, IGT sought to add completely new counterclaims for breach of contract and conversion related to the Cashless Patents (Dkt. No. 80). These counterclaims alleged, for the first time, that the Cashless Patents are based on confidential information that IGT allegedly

---

[1] As explained in Aristocrat's motion to dismiss, the Cashless Patents relate to technology that enables slot machines to print and accept paper tickets that can be redeemed for cash—thereby avoiding the need for the slot machines to dispense cash when patrons are finished playing a game. (Dkt. No. 101 at 1.)

2

provided to Aristocrat more than fifteen years ago. (Dkt. No. 95; Dkt. No. 104 (corrected), pp. 25–27, 34.) IGT filed these counterclaims on January 28 (three days late).[2]

On February 16, Aristocrat filed a motion to dismiss IGT's new breach of contract and conversion counterclaims for failure to state a claim. (Dkt. No. 101.) Aristocrat argued that the counterclaims were insufficiently pled because they failed to identify anything in the Cashless Patents that came from IGT. (*Id.* at 5–8, 11.) Aristocrat also presented multiple reasons for why the counterclaims failed as a matter of law. First, the counterclaims depend on the premise that a patent application filed in October 2000 (which ultimately led to the Cashless Patents) purportedly included confidential information of IGT. That application, however, was not filed by Aristocrat, but rather by a third party, Casino Data Systems ("CDS"), and therefore the filing of that application could not have constituted breach of contract or conversion by Aristocrat.[3] (*Id.* at 11–13.) Second, Aristocrat argued that the statute of limitations had run on the counterclaims, because IGT had known of this patent application since at least 2009, when the Patent Office relied on the disclosure of this application to reject an IGT patent application.[4] (*Id.* at 13–15.) Third, Aristocrat contended that the conversion claim failed because the intangible property at issue (confidential information) cannot give rise to a claim for conversion under Nevada law. (*Id.* at 8–10.)

---

[2] The Court's order granting leave to amend required IGT to file and serve its third set of counterclaims "within the time prescribed by the Federal Rules of Civil Procedure." (Dkt. No. 86.) Under Rule 15(a)(3), this deadline was 14 days after service of Aristocrat's amended answer and counterclaims. With the three-day extension provided by Rule 6(d), IGT's third set of counterclaims should have been filed by January 25, 2016. (Dkt. No. 92.) IGT did not file them until January 28. (Dkt. No. 95). Even with the late filing, IGT filed an incorrect version that differed from the counterclaims it had obtained leave to file. (Dkt. No. 103.) IGT then filed a corrected version on February 18, 2016. (Dkt. No. 104.)

[3] Aristocrat subsequently acquired CDS, but not until after the October 2000 patent application was filed. (Dkt. No. 101 at 11.) This acquisition was reported by the press at the time. *See, e.g.*, March 21, 2016 Declaration of Swanson ("Swanson Decl.") ¶ 3, Ex. 1 (*LV firm Casino Data Systems sold to Australian slot maker*, LAS VEGAS SUN, Jan. 18, 2001); *id.* ¶ 4, Ex. 2 (*Buyout by Aristocrat completed*, LAS VEGAS SUN, July 2, 2001).

[4] The named inventor on this IGT patent application is the same individual who signed the agreements that are the basis for IGT's counterclaims. (Dkt. No. 101 at 14.)

3

IGT never responded to Aristocrat's motion to dismiss.  Instead, IGT filed a *fourth* set of counterclaims on March 4, 2016.  (Dkt. No. 110; Dkt. No. 113 (corrected).[5])  It is this fourth set of counterclaims (styled as IGT's Second Amended Counterclaims) that is the subject of the present motion to strike.  IGT filed these amended counterclaims almost three months after the deadline to amend pleadings without receiving—or even requesting—leave to amend its pleadings.

IGT's fourth set of counterclaims are an apparent but ineffective attempt to amend around Aristocrat's motion to dismiss.  Most notably, these counterclaims introduce an entirely new alleged contract:  a 1993 "Non-Disclosure of Confidential Information Agreement" between IGT and CDS ("CDS Agreement").  (Dkt. No. 113, Counterclaims (hereinafter, "Second Am. Counterclaims") ¶¶ 13, 20–21, Exs. C, D.)  IGT's earlier breach of contract and conversion counterclaims were premised on a Confidentiality Disclosure Agreement entered into between IGT and Aristocrat in 2000 ("Aristocrat Agreement")—which IGT alleged that Aristocrat breached when "Aristocrat employees" allegedly filed the October 2000 patent application.  (Dkt. No. 104, Counterclaims (hereinafter, "First Am. Counterclaims") ¶¶ 15, 20, 90–98, Ex. B.)  IGT changed this allegation in its post-deadline counterclaims, which allege that "*CDS* employees filed [the October 2000] patent application."  (Second Am. Counterclaims ¶ 24 (emphasis added).)  The post-deadline counterclaims also add new allegations of breach of contract and conversion based on the 1993 CDS Agreement.  (*Id.* ¶¶ 103–17.)

The fact that CDS filed the October 2000 application was readily ascertainable by IGT. Aristocrat told IGT in an interrogatory response in September 2015 that the Cashless Patents were developed "as part of Casino Data Systems' work to improve the Oasis system and to incorporate ticketing functionality."  Swanson Decl. ¶ 5, Ex. 3 at 26.  Further, Aristocrat's document production included an assignment of the Cashless Patents, as well as the patent that issued from the October 2000 application (U.S. Patent No. 6,676,515), from CDS to Aristocrat.  Swanson Decl. ¶ 6, Ex. 4 at Aristocrat_0002939–41.  Aside from this discovery, the assignment records at the U.S. Patent and

---

[5] As with the third set of counterclaims, IGT had to file a corrected version of its fourth set of counterclaims.  (Dkt. No. 112.)

1   Trademark Office ("PTO"), which anyone may search on the PTO's website
2   (http://assignment.uspto.gov/), show that the October 2000 application was initially assigned to CDS.
3   (*See* Dkt. No. 101 at 2; Dkt. No. 101-6 at 2.)

4   In addition to adding new claims, IGT made a number of other changes in its post-deadline
5   counterclaims.  For example, IGT added allegations that purport to identify IGT information or ideas
6   that were allegedly disclosed in the October 2000 application or subsequent filings.  (*See* Second Am.
7   Counterclaims ¶¶ 27–32.)  Moreover, in an apparent attempt to plead around the statute of limitations,
8   IGT has withdrawn its express allegation of breach based on the alleged "disclos[ure of] IGT's
9   Proprietary Information in [Aristocrat's] patent filings" made many years ago.  (First Am.
10  Counterclaims ¶ 21; *see also id.* ¶¶ 92, 97.)  The post-deadline counterclaims instead focus on the fact
11  that Aristocrat is "suing IGT for infringement of the [Cashless] patents" in the present action.[6]  (Second
12  Am. Counterclaims ¶¶ 34–36, 108, 116.)  IGT's post-deadline counterclaims also seek an entirely new
13  form of relief:  "A declaration that Aristocrat holds the '619 and '143 patents in constructive trust for the
14  benefit of IGT."  (*Id.* at 37.)

15  IGT filed its post-deadline counterclaims shortly after the parties concluded their negotiations
16  pursuant to the Court's February 9 case management order.  (Dkt. No. 98.)  That order adopted
17  Aristocrat's proposal to proceed with a limited number of patents in a first phase of the case (while
18  staying all remaining patents), and the order required "the parties to meet and confer regarding the
19  selection of patents to be included in the first phase."  (*Id.* at 3.)  Aristocrat filed its motion to dismiss
20  the breach and conversion counterclaims on February 16, while the meet-and-confer process was
21  ongoing.  At IGT's insistence, Aristocrat agreed to include IGT's breach and conversion counterclaims
22  (as originally pled) in the first phase, and IGT agreed that the inclusion of these counterclaims would be
23  "subject to Aristocrat's pending motion to dismiss."  (Dkt. No. 109 at 2.)  Despite this agreement, IGT

---

[6] While IGT's repackaged counterclaims focus on the assertion of the Cashless Patents as constituting the alleged breach or conversion, the counterclaims do not identify any use of confidential information apart from the alleged disclosure in connection with the October 2000 application and subsequent PTO filings. (Second Am. Counterclaims ¶¶ 27, 33, 106, 114.)

5

never revealed that it did not intend to respond to Aristocrat's motion and instead would seek to amend its counterclaims. Moreover, although the parties submitted a proposed schedule for the first phase to the Court (*id.* at 3–5), IGT did not ask to extend the time for amending pleadings.

# ARGUMENT

"[W]here, as here, a Federal Rule of Civil Procedure 16(b) case management scheduling order sets a deadline for amending pleadings and the moving party wishes to amend its pleadings after that deadline, the Court must first modify the scheduling order to permit such an amendment." *Evans v. Inmate Calling Solutions*, No. 3:08-cv-353-GMN-VPC, 2010 WL 4974135, at *2 (D. Nev. Dec. 1, 2010) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir. 1992)). A modification of the scheduling order requires a showing of "good cause and … the [Court's] consent." *Id.* (quoting Fed. R. Civ. P. 16(b)(4)). The failure to seek leave to amend a pleading, when such leave is required, warrants striking the pleading. *See, e.g.*, *Cooley v. Marshal*, No. 2:09-cv-00559-RLH-GWF, 2011 WL 3240453, at *3 (D. Nev. July 28, 2011); *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, No. 2:05-cv-1059-KJD-GWF, 2007 WL 1434893, at *1 (D. Nev. May 14, 2007).

**I.     The Court's Leave Is Required to Amend the Pleadings.**

IGT filed its latest amended counterclaims after the deadline for amending pleadings and without leave of Court. IGT's attempt to amend its pleading unilaterally is improper for two reasons. First, Rule 16(b) required IGT to seek modification of the scheduling order in order to amend its counterclaims after the deadline. Second, even if the deadline had not passed, IGT needed leave to amend under Rule 15(a)(1) because, having previously amended its counterclaims, IGT is not entitled to further amend as a matter of course.

**A.     IGT Must Seek Leave to Amend After the Scheduling Order Deadline to Amend.**

Rule 16 requires a scheduling order to "limit the time to . . . amend the pleadings." Fed. R. Civ. P. 16(b)(3)(A). This Court issued a scheduling order requiring the parties to amend their pleadings by December 15, 2015. (Dkt. No. 69 at 4.) In seeking to amend its counterclaims after this deadline, IGT failed to ask the Court to "modify the scheduling order to permit such an amendment." *Evans*, 2010 WL 4974135, at *2. As such, the amendment was improper.

IGT attempts to circumvent the scheduling order and Rule 16 by purporting to amend its counterclaims "pursuant to Rule 15(a)(1)(B)" (Dkt. No. 113, p. 24), which allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b)." But as the Second Circuit has held, "amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued under Rule 16(b)." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). In other words, the deadline in a Rule 16(b) scheduling order trumps a party's ability to amend as of right under Rule 15(a)(1).

Indeed, the Ninth Circuit has held that the liberal amendment policy of Rule 15(a) "does not provide the standards" by which a court is to evaluate the amendment of pleadings after a deadline set in a scheduling order under Rule 16. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). The requirements of Rule 16, including showing good cause and obtaining the Court's leave to modify the scheduling order, "may not be short-circuited by an appeal to those of Rule 15." *Id.* at 610. Thus, because the amendment deadline had passed in the present case, "[IGT's] ability to amend [its counterclaims] was governed by Rule 16(b), not Rule 15(a)." *Id.* at 608. *Accord* 6A Charles A. Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 1522.2 (3d ed. 2015) ("[T]o the extent that other federal rules, such as Rule 15 governing pleading amendments, contain a more lenient standard than good cause, the Rule 16(b) standard controls any decisions to alter a scheduling order for purposes of making pleading amendments and it must be satisfied before determining whether an amendment should be permitted under Rule 15."); 3-16 James Wm. Moore, *Moore's Federal Practice - Civil* § 16.14[1][a] (Matthew Bender 3d ed. 2015) ("When a party seeks to amend a pleading after the deadline set in the scheduling order, thereby necessitating amendment of the scheduling order as well, courts apply Rule 16(b)'s 'good cause' standard rather than the more lenient standard of Rule 15(a).").

There are sound reasons for this rule. As then-judge Sotomayor, sitting on the Second Circuit, has explained, "[b]y limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (Sotomayor, J.) (quoting Rule 16 advisory committee's note). Similarly, the Ninth Circuit has recognized that disregard

7

of the scheduling order "would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Johnson*, 975 F.2d at 610.

IGT's post-deadline amendment implicates these very concerns by seeking to expand the scope of the case by adding new breach and conversion claims, based on a different contract. This attempted expansion of the case comes after the Court and the parties have invested considerable time in determining how to manage and resolve this complex case. Indeed, Aristocrat relied on the December 15 deadline in requesting that the Court hold a case management conference: "Aristocrat respectfully suggests that this is a logical time for the parties and the Court to discuss a manageable process for discovery, claim construction, and trial. *The deadline for motions to amend pleadings has passed, and thus the bounds of the case (wide as they are) are defined.*" (Dkt. No. 88 at 2 (emphasis added).) Aristocrat again relied on the fact that pleadings were supposed to have been fixed, when Aristocrat agreed that IGT's counterclaims for breach of contract and conversion (as originally pled) should be part of the first phase of this case. (Dkt. No. 108.) Only after this agreement had been finalized—and after IGT agreed that those counterclaims would be "subject to Aristocrat's pending motion to dismiss" (Dkt. No. 109 at 2)—did IGT introduce its new claims based on the 1993 CDS Agreement. IGT's improper attempt to add these claims without leave of Court strikes of the "indolent" and "cavalier" behavior that *Johnson* warns against.

**B.    IGT Is Not Entitled to Amend "As a Matter of Course" Because IGT Has Previously Amended Its Counterclaims.**

Even if the deadline to amend had not already expired, there is an additional reason why IGT cannot now amend its counterclaims as a matter of course. Rule 15(a)(1), on which IGT relies, provides that a party "may amend its pleading *once* as a matter of course" (emphasis added). IGT's post-deadline counterclaims represent at least its second attempt to amend this pleading pursuant to Rule 15—IGT previously amended the counterclaims when it first added its breach and conversion allegations to the case (just before the December 15 deadline). (Dkt. No. 80 at 1 (relying on Rule 15(a)(2), which provides for amendment "with the opposing party's written consent").) Because IGT has already amended its pleading once, IGT can no longer rely on Rule 15(a)(1)(B) to amend.

8

It is of no moment that IGT's earlier amendment was not made as a matter of course. The Fifth Circuit has held that the first amendment to a pleading extinguishes the party's ability to amend as a matter of course, even if the first amendment is made at the direction of the Court, rather than voluntarily as a matter of course. *Elliott v. Foufas*, 867 F.2d 877, 882 (5th Cir. 1989). In *Elliot*, the plaintiff had lost on a Rule 12(e) motion for a more definite statement and was consequently ordered to file an amended complaint. *Id.* at 879–80. When the plaintiff later argued, in opposing a motion to dismiss, that she had the right to amend as a matter of course under Rule 15(a)(1), the district court rejected her argument. *Id.* at 882. In affirming, the Fifth Circuit explained that because "she had already amended her complaint once" when directed to do so by the trial court, any further amendment "could only be by leave of the court." *Id.* at 882–83; *see also In re Crazy Eddie Sec. Litig.*, 792 F. Supp. 197, 203–04 (E.D.N.Y. 1992) (holding that plaintiffs were not entitled to amend complaint as of right where they had already amended complaint with leave of the court). Thus, IGT's attempt to amend as of right—after IGT has already amended its counterclaims once—is improper.

## II.   IGT's Amended Pleading Should Be Stricken Because It Has Not Obtained Leave to Amend.

IGT should not be permitted to circumvent the Court's scheduling order and the Federal Rules. "A scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). An amended pleading filed without leave of the court when such leave is required is "without legal effect." *Crazy Eddie Sec. Litig.*, 792 F. Supp. at 204. Accordingly, "[IGT's] failure to ask leave to amend is sufficient reason to grant [Aristocrat's] motion to strike." *Jones v. United Airlines*, No. 11 C 6374, 2012 WL 6216741, at *9 (N.D. Ill. Dec. 13, 2012); *see also Cooley*, 2011 WL 3240453, at *3 ("Because [Plaintiff] filed his third amended complaint (# 58) without first seeking leave of the Court or Defendants' written consent, the Court orders, *sua sponte*, that it be stricken for failure to comply with Rule 15(a)."); *Vasquez v. Johnson Cty. Hous. Coal., Inc.*, No. CIV.A. 03-2147-CM, 2003 WL 21479186, at *1 (D. Kan. June 16, 2003) ("Where a plaintiff does not have leave to amend portions of his complaint, those portions should be stricken.").

Even if IGT had sought modification of the scheduling order in order to amend its counterclaims, IGT would not have been able to satisfy the "good cause" standard applicable under Rule 16, or even the more liberal standard for amendment under Rule 15(a). *See Liguori v. Hansen*, Case No. 2:11-cv-00492-GWF, 2016 WL 756526, at *4 (D. Nev. Feb. 25, 2016) ("If the moving party can show good cause under Rule 16(b), then the court must consider whether the amendment is proper under Rule 15.").

### A.  Even If IGT Had Sought Leave to Amend, It Could Not Show Good Cause.

In the Ninth Circuit, "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.  In this case, IGT's post-deadline amendment is an attempt to correct defects in its earlier counterclaims.  Although these changes were prompted by Aristocrat's motion to dismiss, they plainly could have been made before the December 15 deadline, if IGT had acted diligently.

First, IGT's post-deadline amendment adds several allegations (Second Am. Counterclaims ¶¶ 28–32) in an apparent response to Aristocrat's argument that the counterclaims "fail to identify the proprietary information that Aristocrat allegedly disclosed or misused" (Dkt. No. 101 at 4).  But the law is (and was) clear that IGT was required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  That IGT chose to rely on "mere conclusory statements, [which] do not suffice," *id.*, is no reason to permit an amendment after the deadline.  *See Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").

Second, IGT could have included the 1993 CDS Agreement in its pre-deadline counterclaims.  As discussed above, the fact that CDS—not Aristocrat—filed the October 2000 patent application is clear from both Aristocrat's discovery in this case and the PTO website.  *See supra*, pp. 4–5.

Third, all of these issues could have potentially been avoided had IGT not waited to assert its breach and conversion counterclaims until the eve of the deadline for amending pleadings.  Aristocrat first asserted the Cashless Patents against IGT in June 2015.  Had IGT promptly asserted these counterclaims, IGT could have relied on Rule 15's more lenient standard in seeking to amend in response to a motion to dismiss.  By waiting until the deadline, IGT ran the risk of being unable to amend if its counterclaims were found not to state a claim.

Fourth, IGT's breach and conversion counterclaims could have been brought well before this lawsuit. As detailed in Aristocrat's motion to dismiss, the patent application that allegedly included IGT's confidential information was filed in October 2000, and the two Cashless Patents were published in 2002 and 2005. (Dkt. No. 101 at 13–14 & n.13.) Further, IGT has known about the alleged improper disclosure of IGT information in the Cashless Patents since at least 2009, when a patent examiner cited and discussed a patent in the same patent family (and which had the same disclosure) in a rejection of an IGT patent application. (*Id.* at 14.) The named inventor on that IGT patent application was Ali Saffari, the same IGT employee who allegedly executed both the 1993 CDS Agreement and the 2000 Aristocrat Agreement. (*Id.*; Dkt. Nos. 110-3, 110-4.) In light of these facts, IGT cannot establish that it has been diligent. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013), *aff'd sub nom.*, *Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591 (2015) (affirming the denial of a motion to amend under Rule 16(b)(4) where the plaintiff had known about the viability of a claim since 2007, but did not seek to add the claim until 2009); *Liguori*, 2016 WL 756526, at *5 (denying leave to amend under Rule 16 where the plaintiffs were likely aware of the basis for claims years before filing suit).

Because IGT cannot establish diligence, "the inquiry should end." *Johnson*, 975 F.2d at 609. The prejudice that IGT's amendment would cause, however, further supports rejecting the amendment. *See id.* ("[T]he existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion."). Aristocrat relied on the December 15, 2015 deadline in seeking a case management conference when it did, and Aristocrat agreed to include the *original* breach of contract and conversion counterclaims in the first phase of the case. IGT, in turn, agreed that those counterclaims would be "subject to Aristocrat's pending motion to dismiss." (Dkt. No. 109 at 2.) If IGT were allowed to change the terms of the agreement after it was struck—and expand the case by asserting entirely new breach and conversion counterclaims based on a previously undisclosed contract—Aristocrat would lose the benefit of the bargain.

### B. Absent an Explanation of Why IGT's Amendment Overcomes the Motion to Dismiss, the Amendment Should Be Denied As Futile.

Even if IGT could meet the good cause standard under Rule 16, which it cannot, IGT's amendment still would fail to meet the separate standard of Rule 15. Aristocrat's motion to dismiss

11

raised several reasons for why IGT's original breach and conversion counterclaims failed to state a claim. At least certain of these issues have not been cured through IGT's post-deadline amendment. (*See, e.g.*, Dkt. No. 101 at 8–10 (explaining that Nevada law does not permit a claim for conversion of confidential information).) IGT, which never responded to the motion, has made no attempt to explain why its post-deadline amendment is sufficient to overcome Aristocrat's motion. To the extent IGT is permitted to (belatedly) seek leave to amend, IGT should offer such an explanation. If IGT is unable to do so, its amendment should also be rejected under Rule 15. *See Liguori*, 2016 WL 756526, at *4 (an amendment that would "result in futility for lack of merit" need not be permitted under Rule 15); *id.* at *6 (denying leave to amend in part because the statute of limitations had likely run on proposed claim).

### III.   Aristocrat Should Not Be Required to Respond to IGT's Amended Counterclaims.

"[I]f an amendment requiring permission of the court or the opposing party is served without obtaining the court's leave or opposing party's consent, it is without legal effect." *Vasquez*, 2003 WL 21479186, at *1. Thus, Aristocrat should not be required to answer or otherwise respond to IGT's improper amended counterclaims. However, in the event that the Court should deny this motion to strike, Aristocrat respectfully requests that the Court grant Aristocrat 21 days to answer or otherwise respond to IGT's amended counterclaims. *See Gen. Mills, Inc. v. Kraft Foods Glob., Inc.*, 495 F.3d 1378, 1380 (Fed. Cir. 2007) (holding that under Rule 15, a court may order a different deadline for responding to an amended pleading and would be expected to do so where a party may be prejudiced by being forced to answer an amended pleading that the party also moves to dismiss).

### CONCLUSION

For the reasons stated above, Aristocrat respectfully requests that the Court strike IGT's amended counterclaims filed on March 7, 2016 (Dkt. No. 113) and proceed to decide Aristocrat's Motion to Dismiss Counterclaim Plaintiff IGT's Breach of Contract and Conversion Claims (Dkt. No. 101).

DATED:   March 21, 2016

Respectfully submitted,

*/s/ Peter A. Swanson*
NICHOLAS J. SANTORO
SANTORO WHITMIRE, LTD.
10100 W. Charleston Blvd., Suite 250
Las Vegas, Nevada  89135
Telephone:  (702) 948-8771
Facsimile:  (702) 948-8773
E-mail:  nsantoro@santoronevada.com

ROBERT T. HASLAM
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone:  (650) 632-4700
Facsimile:  (650) 632-4800
E-mail:  rhaslam@cov.com

GARY M. RUBMAN
PETER A. SWANSON
COVINGTON & BURLING LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001
Telephone:  (202) 662-6000
Facsimile:  (202) 662-6291
E-mail:  grubman@cov.com,
pswanson@cov.com

*Attorneys for Defendant/Counterclaim Plaintiffs Aristocrat Technologies, Inc., Aristocrat Technologies Australia Pty Ltd., and Aristocrat International Pty Ltd.*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2016, I served via CM/ECF and/or deposited for mailing in the U.S. Mail a true and correct copy of the foregoing COUNTERCLAIM DEFENDANTS ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY LTD., AND ARISTOCRAT INTERNATIONAL PTY LTD.'S MOTION TO STRIKE COUNTERCLAIM PLAINTIFF IGT'S AMENDED ANSWER AND SECOND AMENDED COUNTERCLAIMS, postage prepaid (if U.S. Mail) and addressed to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.

  /s/ Rachel Jenkins
  An employee of Santoro Whitmire