**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IGT, | ) |
| | ) |
| Plaintiff, | ) Case No.: 2:15-cv-00473-GMN-GWF |
| vs. | ) |
| | ) **ORDER** |
| ARISTOCRAT TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |
| ARISTOCRAT TECHNOLOGIES, INC., ARISTOCRAT TECHNOLOGIES AUSTRALIA PTY. LTD., AND ARISTOCRAT INTERNATIONAL PTY. LTD., | ) |
| | ) |
| Counterclaim-Plaintiffs, | ) |
| vs. | ) |
| IGT, | ) |
| | ) |
| Counterclaim-Defendant. | ) |

Pending before the Court is a Motion to Strike, (ECF No. 114), filed by Defendants Aristocrat Technologies, Inc., Aristocrat Technologies Australia Pty. Ltd., and Aristocrat International Pty. Ltd. (collectively "Aristocrat"). Plaintiff IGT ("IGT") filed a Response, (ECF No. 117), and Aristocrat filed a Reply, (ECF No. 118).

Also pending before the Court is Aristocrat's Motion to Dismiss, (ECF No. 101). IGT did not file a Response, and the deadline to do so has passed.

Also pending before the Court is IGT's Renewed Motion for Preliminary Injunction, (ECF No. 122). Aristocrat filed a Response, (ECF No. 129), and IGT filed a Reply, (ECF No.

139).[1]  For the reasons discussed below, Aristocrat's Motion to Dismiss and Motion to Strike are **GRANTED**, and IGT's Motion for Preliminary Injunction is **DENIED**.

## I.   BACKGROUND

IGT brought this patent infringement suit against Aristocrat alleging infringement of the following United States Patents: (1) 7,131,908 ("the '908 patent"); (2) 7,513,827 ("the '827 patent"); (3) 6,394,902 ("the '902 patent"); (4) 7,384,334 ("the '334 patent"); (5) 8,753,189 ("the '189 patent"); (6) D503,951 ("the '951 patent"); (7) 6,375,570 ("the '570 patent"); (8) 6,702,675 ("the '675 patent"); (9) 7,303,469 ("the '469 patent"); and (10) 6,932,701 ("the '701 patent"). (Compl., ECF No. 1).  IGT further requested declaratory judgment under the assignor estoppel doctrine for the following patents: (1) the '570 patent; (2) the '675 patent; (3) the '469 patent; and (4) the '701 patent. (*Id.*).[2]  After Aristocrat initially answered and asserted patent infringement counterclaims, including for infringement of United States Patent Nos. 6,896,619 ("the '619 patent") and 7,704,143 ("the '143 patent"), (*see* Aristocrat's Ans., ECF No. 38), IGT asserted its own counterclaims, (*see* IGT's Ans. and Countercls., ECF No. 50).

Following this initial round of pleadings, IGT amended its counterclaims with Aristocrat's consent to add counterclaims for breach of contract and conversion. (*See* IGT's Am. Ans. and Countercls., ECF No. 104).[3]  Aristocrat moved to dismiss these new counterclaims. (Mot. to Dismiss, ECF No. 101).  IGT did not file a response.  Instead, IGT filed

---

[1] In addition, Aristocrat filed a Motion for Leave to File a Surreply (ECF No. 143), and IGT filed two Motions for Leave to File Supplemental Memorandum and Authority (ECF Nos. 125, 145).  For good cause appearing, the Court grants these motions.

[2] The Court's Order of September 18, 2015, dismissed IGT's request for declaratory relief under assignor estoppel for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Order 5:25–6:1, ECF No. 70).

[3] IGT originally filed its First Amended Counterclaims, (ECF No. 95), on January 28, 2016.  On February 18, 2016, IGT filed a Notice of Corrected First Amended Counterclaims, (ECF No. 104).

its Second Amended Counterclaims, (ECF No. 113),[4] which Aristocrat now seeks to strike, (*see* Mot. to Strike, ECF No. 114).

Additionally, before the present round of motions, IGT brought a Motion for Preliminary Injunction, asking the Court to enjoin Aristocrat from initiating reexamination or *inter partes* review ("IPR") of the '570, '675, '469, and '701 patents ("the Kaminkow patents"). (Mot. for Prelim. Inj. 2:20–23, ECF No. 48). The Court denied IGT's Motion because IGT had not shown a likelihood of irreparable harm given that "[m]ultiple contingencies must occur before [Aristocrat's] Petition would injure [IGT]." (Order 7:11–12, ECF No. 70). "Specifically, the United States Patent Office would have to institute the proceedings and reach a finding of invalidity before [IGT] would actually suffer injuries from [Aristocrat's] petition." (*Id.* 7:12–14). IGT appealed the Court's Order to the Federal Circuit, (Renewed Mot. for Prelim. Inj. 5:17–18, ECF No. 122), and Aristocrat filed IPR petitions on the Kaminkow patents. (*Id.* 5:21–22).

During the pendency of IGT's appeal, the U.S. Patent and Trademark Office ("PTO") instituted IPR on two of the four Kaminkow patents—the '570 patent and the '469 patent. (*See* Exs. A–C to Renewed Mot. for Prelim. Inj., ECF No. 122-2–4). In light of the PTO's decision, IGT filed the instant Renewed Motion for Preliminary Injunction, which asks the Court to "enjoin Aristocrat from proceeding with IPR petitions on the Kaminkow patents." (Renewed Mot. for Prelim. Inj. 17:2–3). Shortly thereafter, the Federal Circuit vacated the Court's Order denying the preliminary injunction and remanded the case for the Court "to determine whether and how the filing and institution of Aristocrat's petitions weigh in the preliminary injunction analysis." *IGT v. Aristocrat Techs., Inc.*, No. 2015-2083, 2016 WL 2754440, at *2–*3 (Fed. Cir. May 12, 2016).

---

[4] IGT originally filed its Second Amended Counterclaims, (ECF No. 110), on March 4, 2016. On March 8, 2016, IGT filed a Notice of Corrected Second Amended Counterclaims, (ECF No. 113).

## II. LEGAL STANDARD

### A. Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  When a party moves to amend the pleadings after the expiration of the deadline established in the scheduling order, courts review the motion through a two-step process.  First, courts treat the motion as seeking to amend the scheduling order, which is governed by the "good cause" standard outlined in Rule 16(b) of the Federal Rules of Civil Procedure. *See, e.g.*, *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* at 609.  In particular, courts look to whether the deadline set in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the amendment." *Id.*  Although prejudice to the opposing party may also be considered, the focus of the inquiry is on the movant's reasons for seeking modification. *Id.*  "If that party was not diligent, the inquiry should end." *Id.*  The party seeking amendment bears the burden of establishing diligence. *See, e.g.*, *Morgal v. Maricopa County Bd. of Supervisors*, 284 F.R.D. 452, 460 (D. Ariz. 2012).

When "good cause" has been established under Rule 16(b), courts will then examine whether amendment is proper under the standards outlined in Rule 15(a).  Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires," and there is a strong public policy in favor of permitting amendment. *Bowles v. Reade*, 198 F.3d 752, 757 (9th Cir. 1999).  As such, the Ninth Circuit has made clear that Rule 15(a) is to be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (*per curiam*).  Under Rule 15(a), courts consider various factors, including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the plaintiff has previously amended the complaint. *See id.* at 1052.  These factors do

not carry equal weight, however, and prejudice is the touchstone of the analysis. *See id.* The party opposing the amendment bears the burden of showing why leave to amend should be denied. *See, e.g.*, *Desert Protective Council v. U.S. Dept. of the Interior*, 927 F. Supp. 2d 949, 962 (S.D. Cal. 2013) (citing *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989)). When the movant fails to establish good cause under Rule 16(b), however, that shortcoming is sufficient to deny the motion and the Court need not address whether the standards in Rule 15(a) have been met. *See, e.g.*, *Morgal*, 284 F.R.D. at 460.

### B.     Motion to Dismiss

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### C.  Preliminary Injunction

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22.

The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

"In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)).

"The urgency of obtaining a preliminary injunction necessitates a prompt determination and makes it difficult to obtain affidavits from persons who would be competent to testify at

trial. The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (citing 11 C. Wright and A. Miller, *Federal Practice and Procedure, Civil*, § 2949 at 471 (1973)).

### III. DISCUSSION

#### A. Aristocrat's Motion to Strike (ECF No. 114)

Aristocrat's Motion seeks to strike IGT's Second Amended Counterclaims on the basis that they were filed in violation of the Court's Scheduling Order, (ECF No. 69). (*See* Mot. to Strike 9:14–12:9, ECF No. 114). The deadline to amend pleadings in this case expired on December 15, 2015. (Order 4:1–2). Notwithstanding this deadline, IGT filed its Second Amended Counterclaims, (ECF No. 110), on March 4, 2016, without requesting the Court's leave to amend either its First Amended Counterclaims, (ECF No. 95), or the Court's Scheduling Order. Despite IGT's error, the Court construes the Second Amended Counterclaims as a motion to amend the court's scheduling order and first analyzes whether IGT has met Federal Rule of Civil Procedure Rule 16(b)'s good cause standard. *See Johnson*, 975 F.2d at 609; *Pickett v. Nev. Bd. of Parole Comm'rs*, No. 2:09-CV-01695-PMP, 2013 WL 6197095, at *2 (D. Nev. Nov. 26, 2013) (treating an untimely motion for leave to file amended complaint as motion to amend the scheduling order).

IGT argues that it was diligent in amending its counterclaims because it did so "within three weeks of Aristocrat pointing out the alleged defects in IGT's counterclaims." (Resp. to Mot. to Strike 11:26–27, ECF No. 117). This explanation fails to demonstrate why the deadline set in the scheduling order could not reasonably be met. *See Johnson*, 975 F.2d at 608 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."). IGT's remaining arguments—absence of prejudice, undue delay, and futility—relate to Federal Rule of Civil Procedure 15(a)'s liberal amendment standard. *See Eminence*

*Capital*, 316 F.3d at 1052.  However, as discussed *supra*, once the Court determines "that [a] party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 608.  Consequently, because IGT has failed to meet its threshold burden to establish diligence, the Court grants Aristocrat's Motion to Strike IGT's Second Amended Counterclaims.

### B. Aristocrat's Motion to Dismiss (ECF No. 101)

Aristocrat moves to dismiss Counts XXIII and XXIV of IGT's First Amended Counterclaims alleging breach of a Confidentiality Disclosure Agreement ("CDA") between IGT and Aristocrat and tortious conversion of IGT's intellectual property. (Mot. to Dismiss 2:1–3, ECF No. 101).  Aristocrat argues several grounds for dismissal under Federal Rule of Procedure 12(b)(6): (1) the counterclaims "fail to identify the proprietary information that Aristocrat allegedly disclosed or misused," (*id.* 4:23–24); (2) IGT "does not allege facts showing that its 'Proprietary Information' constitutes a property interest that is capable of being converted," (*id.* 8:8–9); (3) Aristocrat did not file the patent application reflecting the alleged disclosure of confidential information, (*id.* 11:15–13:3); and (4) IGT's state-law claims care time barred under Nevada's statute of limitations, (*id.* 13:4–15:2).

IGT failed to file a response to Aristocrat's Motion.  "The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion." LR 7-2(d).  Further, IGT appears to agree with Aristocrat that its First Amended Counterclaims would not survive scrutiny under Federal Rule of Civil Procedure 12(b)(6). (*See* Resp. to Mot. to Strike 11:27–28, 12:3–5) ("[T]he changes [in IGT's Second Amended Counterclaims] were prompted by Aristocrat's motion to dismiss . . . . IGT's second amended counterclaims responded to Aristocrat's motion to dismiss by providing additional detail to overcome Aristocrat's *Twombly* objections.").  Accordingly, the Court grants Aristocrat's Motion and dismisses Counts XXIII and XXIV of IGT's First Amended Counterclaims.

Because the Court cannot find that amendment would be futile, the Court will grant leave to amend. Fed. R. Civ. P. 15(a); *Forman v. Davis*, 371 U.S. 178, 182 (1962). However, the Court finds it appropriate to cabin any such amendment to preclude IGT from subverting the requirements of Federal Rule of Civil Procedure 16(b), discussed *supra*. Specifically, IGT may not claim breach of contract or tortious conversion related to any alleged disclosure of confidential information acquired by Casino Data Systems ("CDS") pursuant to the Non-Disclosure of Confidential Information Agreement ("NDA") between IGT and CDS. IGT first mentions the NDA in its Second Amended Counterclaims, and, given IGT's allegation that the NDA was executed in 1993, it appears that IGT could have raised such claims in the First Amended Counterclaims. (*See* Second Am. Countercls. 28:1–3, ECF No. 113). Allowing IGT to include the NDA after striking its Second Amended Counterclaim would simply achieve an end-run around IGT's lack of diligence in seeking to amend the Court's Scheduling Order.

### C. IGT's Renewed Motion for Preliminary Injunction (ECF No. 122)

The Court denied IGT's first Motion for Preliminary Injunction for two reasons. First, the Court held that because an IPR had been neither filed nor instituted, any possible injury to IGT was "too contingent to satisfy the likelihood of irreparable harm standard." (Order 7:16–17, ECF No. 70). The Federal Circuit agreed that "IGT failed to show a likelihood of irreparable harm" at the time IGT filed its motion because "multiple events [had] yet to occur before IGT would potentially experience cancellation of its claims." *IGT*, 2016 WL 2754440, at *2. However, because the PTO instituted IPR on two of IGT's patents, the Federal Circuit remanded for the Court "to determine whether and how the filing and institution of Aristocrat's petitions weigh in the preliminary injunction analysis." *Id.* at *3. For the reasons discussed below, the Court finds that these "changed circumstances" do not alter its original conclusion. *Id.*

The Court also held in its Order on IGT's first Motion for Preliminary Injunction that "[b]ecause *inter partes* review is a statutorily permitted procedure, [Aristocrat] would not infringe on any of [IGT's] legal rights by pursuing such action." (Order 7:25–8:1). Further, the Court noted that "[IGT] has not provided, and the Court has not found, any precedent case enjoining a defendant from seeking *inter partes* review at this stage in the proceedings." (*Id.* 7:23–25).[5] IGT has not presented any new arguments to overcome this aspect of the Court's Order, (*see, e.g.*, Reply 3:12 n.2, ECF No. 139) ("IGT's *renewed* motion renews the arguments IGT made in the first round of briefing."), and the Federal Circuit specifically declined to consider it, *see IGT*, 2016 WL 2754440, at *2 n.2. As a result, this aspect of the Court's Order is dispositive of the instant Motion for Preliminary Injunction. The PTO's decision to institute IPR therefore does not alter the Court's Order denying IGT's original Motion for Preliminary Injunction, and IGT's Renewed Motion for Preliminary Injunction is likewise denied.[6]

/ / /

/ / /

/ / /

/ / /

/ / /

---

[5] Other district courts that have considered this issue have opined that IPRs may not be enjoined. *See Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 447 (D.N.J. 2015) ("To issue an injunction against Defendants now would have the direct consequence of preventing the [Patent Trial and Appeal Board ("PTAB")] from reviewing the case after a decision has already been made to institute review, and would undermine the PTAB's final decisionmaking authority."); *Paice LLC v. Ford Motor Co.*, No. CV MJG-14-492, 2015 WL 9898135, at *5–6 (D. Md. Aug. 12, 2015) (same).

[6] IGT recently filed an Emergency Motion for a Status Conference regarding its Renewed Motion for Preliminary Injunction. (Em. Mot. 2:1–9, ECF No. 156). In this Motion, IGT requests that the Court rule on the preliminary injunction issue by August 15, 2016, to "allow the losing party to appeal the decision to the Federal Circuit in time for that court to issue a ruling by January 26, 2017—the date on which the PTAB will hold a hearing on the validity of the first Kaminkow patent at issue in the Patent Office proceedings." (*Id.* 2:10–13). Given that the instant Order addresses IGT's concerns, the Court denies IGT's Emergency Motion for a Status Conference as moot.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Aristocrat's Motion to Strike IGT's Amended Answer and Second Amended Counterclaims, (ECF No. 114), is **GRANTED**. IGT's Second Amended Counterclaims, (ECF Nos. 110, 113), are hereby **STRICKEN** from the record.

**IT IS FURTHER ORDERED** that Aristocrat's Motion to Dismiss, (ECF No. 101), is **GRANTED**. Counts XXIII and XXIV of IGT's First Amended Counterclaims, (ECF Nos. 95, 104), are hereby **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that IGT shall have twenty-one days from the date of this Order to file amended counterclaims consistent with this Order. Failure to file amended counterclaims by this date shall result in the dismissal of Counts XXIII and XXIV of IGT's First Amended Counterclaims with prejudice.

**IT IS FURTHER ORDERED** that IGT's Motion for Preliminary Injunction, (ECF No. 122), is **DENIED**.

**IT IS FURTHER ORDERED** that Aristocrat's Motion for Leave to File a Surreply, (ECF No. 143), is **GRANTED.**

**IT IS FURTHER ORDERED** that IGT's Motions for Leave to File Supplemental Memorandum and Authority, (ECF Nos. 125, 145), are **GRANTED**.

**IT IS FURTHER ORDERED** that IGT's Emergency Motion for a Status Conference, ECF No. 156), is **DENIED as moot**.

**DATED** this __11__ day of August, 2016.

Gloria M. Navarro, Chief Judge
United States District Court